STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v. EDWARD S. McCALL, DEFENDANT-APPELLANT.

Argued February 1, 1954—Decided March 8, 1954.

*Mr. J. Leroy Jordan* argued the cause for the appellant.

*Mr. H. Russell Morss, Jr.*, Prosecutor of Union County, argued the cause for the respondent (*Mr. Chester A. Weidenburner*, Assistant Prosecutor).

The opinion of the court was delivered by

BURLING, J.  This is an appeal from a judgment of conviction of the defendant, Edward S. McCall, as an habitual criminal.  The judgment, entered in the Union County Court in December 1952, was affirmed by the Superior Court, Appellate Division, on a divided vote.  27 *N. J. Super.* 157. The defendant filed an appeal as of right to this court. *N. J. Const.* 1947, *Art.* VI, *Sec.* V, *par.* 1, *clause* (*b*); *R. R.* 1:2–1(*b*).

The record discloses that the defendant was convicted in the former Union County, New Jersey, Court of Special Sessions on November 13, 1941 of the crime of forgery (*R. S.* 2:132–1), and was committed to the reformatory at Annandale; that on July 29, 1943 the defendant was convicted in the former Union County Court of Special Sessions on three separate allegations (to each of which he had entered the plea of "guilty") of violation of *R. S.* 2:115–1, *i. e.*, breaking, entering and larceny by night (respectively the allegations charged the defendant with the commission of separate offenses on July 3, 1943, June 23, 1943, and July 13, 1943); that on April 26, 1945, the defendant was convicted in the Union County Court of Quarter Sessions on four separate indictments (to each of which he had entered the plea of "*non vult*") for breaking, entering and stealing by night (each indictment charged the defendant with the commission of a separate offense on March 19, 1943, April 9, 1943, April 28, 1943, and June 10, 1943).  Each of the convictions on July 29, 1943 resulted in a separate sentence to the New Jersey State Reformatory, but each sentence was made to run concurrently with the other two.  Each of the convictions on April 26, 1945 resulted in a separate sentence of imprisonment at hard labor in the State Prison for a minimum term of two years and a maximum term of three

years, but each sentence was made to run concurrently with the other three.

On October 9, 1952, in the Union County Court, the defendant was again convicted of a high misdemeanor, namely breaking and entering by night with intent to steal (*N. J. S.* 2A:94–1). The offense allegedly occurred on February 10, 1952.

While the defendant awaited sentence on the October 9, 1952 conviction, the State filed an accusation charging that the defendant was an habitual criminal subject to the penalties of *N. J. S.* 2A:85–8, 9 and 12. A mistrial occurred, following which the State amended its accusation.

The amended accusation contained two counts. The first count alleged that the defendant had sustained prior convictions on four occasions, namely November 13, 1941 (forgery), July 29, 1943 (burglary, on the three allegations hereinabove adverted to), on April 26, 1945 (burglary, on the four indictments hereinabove adverted to) and on October 9, 1952 (the conviction for burglary hereinabove last mentioned). This count was abandoned by the State at the trial. The second count alleged that each of the convictions hereinbefore mentioned (one on November 13, 1941, three on July 29, 1943, four on April 26, 1945, and one on October 9, 1952) constituted a conviction on a separate "occasion." On December 2 and 3, 1952, the defendant was tried as an habitual criminal on the second count. During the course of the trial evidence was introduced in the defendant's behalf to prove that the defendant was born on July 30, 1925. On this evidence the trial court ruled that the purported conviction for forgery on November 13, 1941 could not stand, and ordered that allegation stricken out.

After summation and charge, the jury retired at 3:00 P. M. to consider their verdict. Subsequently (at 4:30 P. M.) they returned to the courtroom for further instructions. The jurors asked several questions. They asked whether their belief that the crimes committed were not serious enough to warrant a life sentence should influence them. The trial court instructed them that such a consideration

was not a matter open to them to decide. They asked what maximum sentence could be imposed on the defendant on his last conviction if they found him "not guilty" as an habitual criminal. The trial court instructed them that this was not an element open for their consideration. Other questions related to the construction and application of *N. J. S.* 2A:85–12, *supra.* The trial court charged "that if this defendant pleaded guilty or *non vult* to separate accusations or indictments, the fact that those pleas were taken on the same day or at the same court session on that day would not prevent them from being separate occasions within the meaning of the statute."

The jury again retired to the jury room, but at 5:30 P. M. requested further instructions. They returned to the courtroom and asked the court what would happen to the defendant if the jury did not agree. The prosecutor then addressed the trial court, and the following colloquy ensued:

"Mr. Morss: Sir, will you instruct the jury there will have to be another trial in the event they do not agree?

Mr. Liotta: I don't think that is fair for the Prosecutor to make such a remark.

The Court: The remarks of counsel are stricken out. Let the jury go back and if they cannot agree, in any event, they will be discharged.

Mrs. Glacken (No. 10): Is it an improper question to ask whether or not this man will be retried for the same thing?

The Court: I don't think that has anything to do with this jury. It is not for you to say. If the jury reports they cannot agree we will discharge them from this case."

The jury again retired and five minutes later returned with a verdict of guilty.

The questions involved may be summarized as follows:

(a) What is the proper construction and application of *N. J. S.* 2A:85–12, *supra,* under the circumstances of this case?

(b) Is *N. J. S.* 2A:85–12, *supra,* unconstitutional for uncertainty?

(c) Was a request by the prosecutor, in the presence of the jury, that the jury be instructed that in the event of

their disagreement the defendant would have to be given another trial, cause for reversal under the circumstances of this case?

(d) Was the defendant entitled to collaterally attack the judgment record of the 1941 forgery conviction?

*N. J. S.* 2*A*:85–12, *supra,* reads as follows:

"Any person convicted on 3 separate occasions of high misdemeanors in this state, or of crimes under the laws of the United States or any other state or country, which crimes would be high misdemeanors under the laws of this state, or whose convictions for such offenses in this state or under the laws of the United States or any other state or country shall total 3 or more, and who thereafter is convicted of an offense enumerated in this subtitle, is hereby declared to be an habitual criminal, and the court in which such fourth or subsequent conviction is had, shall impose a life sentence in the state prison upon the person so convicted.

"Conviction of 2 or more of such crimes or high misdemeanors charged in 1 indictment or accusation, or in 2 or more indictments or accusations consolidated for trial shall be deemed to be only 1 conviction."

*L.* 1927, *c.* 263, *sec.* 1, *p.* 483, from which the present section stems, was incorporated in the *Revised Statutes of 1937,* in *R. S.* 2:103–10, which reads as follows:

"Any person who has been three times convicted of crimes enumerated in this subtitle and sentenced each time to the state prison, and has served such three sentences so imposed, or any part thereof, and who shall thereafter be convicted of a subsequent offense enumerated in this subtitle, is hereby declared to be an habitual criminal, and the court in which such fourth or subsequent conviction is had, in imposing sentence, may, in its discretion, impose a life sentence in the state prison upon the person so convicted."

By *L.* 1940, *c.* 219, *p.* 889, *sec.* 3 this section (*R. S.* 2:103–10, *supra*) was amended to read as follows:

"Any person who on three separate occasions has been convicted of high misdemeanors in this State, or of crimes under the laws of the United States or of any other State or country, which crimes would be high misdemeanors if committed in this State, or whose convictions for such offenses in this State or under the laws of the United States or of any other State or country shall total three or more, and who shall thereafter be convicted of a subsequent offense enumerated in this subtitle, is hereby declared to be an habitual

criminal, and the court in which such fourth or subsequent conviction is had, shall impose a life sentence in the State Prison upon the person so convicted."

Comparison of *R. S.* 2:103–10, *supra,* with the present statute, *N. J. S.* 2A:85–12, *supra,* clearly demonstrates that material changes were effected by the Legislature in the enactment of *N. J. S.* 2A:85–12 (as part of the Revision of *Title* 2 of the *Revised Statutes,* see *L.* 1951, *c.* 344, approved December 5, 1951, effective January 1, 1952).

█ █ In reaching the meaning of amendatory language the court must look to the prior law, the matters deemed to require correction thereunder, and the remedy enacted. *Grogan v. De Sapio,* 11 *N. J.* 308, 323 (1953); *Lynch v. Borough of Edgewater,* 8 *N. J.* 279, 286 (1951); *Grobart v. Grobart,* 5 *N. J.* 161, 166 (1950); *Blackman v. Iles,* 4 *N. J.* 82, 89 (1950); 1 *Sutherland, Statutory Construction* (*3rd ed.* 1943), *sec.* 1932. And it is axiomatic that statutory language is to be construed with the context of the whole statute, its purposes, and the circumstances under which the words were employed, and to be given the generally accepted meaning unless the contrary intent is clear.

█ Further it is settled that the courts will not construe a clause in a statute in such a manner as to charge the Legislature with rendering impotent the clear intention of the whole act.

What was the meaning of *R. S.* 2:103–10, *supra?* Clearly it embodied the intent to declare that convictions for separate offenses, coupled with service of a portion of each of the sentences imposed, was the test of prior conviction. The language was clear: "Any person who has been three times convicted of crimes * * * and sentenced each time to the state prison, and has served such three sentences so imposed * * *." Discretion was vested in the trial court to determine whether the life sentence was to be imposed. The statute did not expressly limit prior offenses to the category of high misdemeanors.

The 1940 amendment indicates a change of legislative intent. It removed the necessity for service of the sentence

imposed on each of the prior convictions and limited the prior convictions to convictions of high misdemeanors. The fourth (or subsequent) conviction was not limited to a high misdemeanor, and the imposition of the life sentence was made mandatory. We observe, in passing, that by *L.* 1953, *c.* 166, *sec.* 3, not applicable to the judgment under review in this case, the Legislature amended *N. J. S.* 2*A*:85–12, *supra, inter alia,* by changing the word "shall" to the word "may" and thus restored discretion to the sentencing judge in respect of the imposition of a life sentence. Thus, we note that from 1927 to 1940 the imposition of the life sentence was discretionary, from 1940 to 1953 it was mandatory, and since May 22, 1953 it has been discretionary.

It is unnecessary to determine the motivation for the enactment of *L.* 1927, *c.* 263, *supra.* It is significant however that the Legislature in 1940 removed the requirement for service of the prior sentence. This amendment focused the legislative intent upon the conviction and its deterrent effect, as opposed to the consideration of the penal servitude as a period of correction and rehabilitation. The penal characteristic of the 1940 amendment was further emphasized by the introduction of the mandatory life sentence.

The statute as amended in 1940 was considered in *In re Zee,* 13 *N. J. Super.* 312, 319 (*Cty. Ct.* 1951), affirmed *sub nom. State v. Zee,* 16 *N. J. Super.* 171 (*App. Div.* 1951). The State in the present matter asserts that *In re Zee* is controlling and requires the construction of *N. J. S.* 2*A*:85–12, *supra,* to the effect that each separate prior conviction for each separate prior offense is a "conviction" on a separate occasion. The State further contends that we adopted this construction in *In re Caruso,* 10 *N. J.* 184, 189 (1952). Neither *In re Zee, supra,* nor *In re Caruso, supra,* specifically considered this question. The philosophy inherent in *R. S.* 2:103–10 as amended in 1940, *supra,* was expressed in *In re Zee, supra,* as enhancement of the penalty for *subsequent* offenses, taking into consideration the persistence of the defendant in his criminal course. Although our approval of the *Zee* case in this respect (*In re Caruso, supra*) did not

occur until after the enactment of the 1951 amendment (December 1951) it is a certainty that the Legislature was cognizant of Judge Richard J. Hughes' opinion therein (filed April 19, 1951) and of the Appellate Division affirmance (October 9, 1951). It is well settled that in construing a statute it is to be assumed that the Legislature was and is thoroughly conversant with its own legislation and the judicial construction thereon. *Barringer v. Miele*, 6 *N. J.* 139, 144 (1951); *Eckert v. New Jersey State Highway Department*, 1 *N. J.* 474, 479 (1949). *Cf. Miller v. Board of Chosen Freeholders of Hudson County*, 10 *N. J.* 398, 413 (1952).

The underlying philosophy in the *Zee* and *Caruso* cases, *supra*, and in the treatment of recidivists generally, has been more recently reiterated by us in *Mahoney v. Parole Board of New Jersey*, 10 *N. J.* 269, 277 (1952), appeal dismissed, 344 *U. S.* 871, 73 *S. Ct.* 173, 97 *L. Ed.* 675 (1952), in the following language:

"* * * With the habitual criminal the police power is exerted primarily to protect the persons and property of citizens of the state because *the prisoner's conduct has already demonstrated his inability to learn to accept social and civil responsibility.* * * *" (Emphasis supplied.)

This underlying philosophy is consistent with the *Zee* and *Caruso* cases, *supra*, and with *R. S.* 2:103–10 as amended in 1940, *supra*. However, it does not preclude an examination into the extent of criminal conduct deemed by the Legislature to be a prerequisite to classification as an habitual criminal. The Legislature could place emphasis on service of prior sentences, as in the 1927 act, or solely on the commission of separate subsequent offenses (and conviction thereof) giving the criminal an opportunity to reconsider the error of his ways after first, second and third convictions.

The 1951 amendment hereinabove adverted to changed the introductory line of the section (now *N. J. S.* 2A:85–12, *supra*). This would have meant little in itself. At the same time, however, the Legislature added the following paragraph:

> "Conviction of 2 or more of such crimes or high misdemeanors charged in 1 indictment or accusation, or in 2 or more indictments or accusations consolidated for trial shall be deemed to be only 1 conviction."

The above paragraph of the Habitual Criminals Act as reenacted in *N. J. S.* 2A:85–12 in 1951 is clear. It is an embodiment of the amelioration philosophy subsequently expressed in the *Report to Governor Alfred E. Driscoll of the Committee to Examine and Investigate the Prison and Parole Systems of New Jersey* (appointed by Governor Driscoll under *L.* 1941, *c.* 315, *N. J. S. A.* 52:15–7), dated November 21, 1952, at *page* 86 namely:

> "* * * Where in the particular circumstances life imprisonment is deemed harsh and unreasonable, the prosecution becomes abortive. And the life sentence may frustrate rehabilitation while there is still hope. * * *"

■■ The crux of this case is whether the words "consolidated for trial" as used in *N. J. S.* 2A:85–12, *supra,* shall be given their technical meaning or whether the Legislature intended a more general meaning in the use thereof. An exception in a statute may be liberally construed to serve the general legislative policy, and the language used therein is not to be given a literal technical meaning where such an application of its terms would defeat the legislative design. *Wright v. Vogt,* 7 *N. J.* 1, 6–7 (1951). In the present case, the convictions on July 29, 1943 were of allegations which were heard consecutively and upon conviction of which the defendant had imposed upon him concurrent sentences. The same situation obtained concerning the April 26, 1945 convictions. In both instances therefore there was a "consolidation for trial" within the statutory provision. Each group of convictions therefore constituted one "conviction" on a separate "occasion" under *N. J. S.* 2A:85–12, *supra.*

The foregoing conclusion indicates a declaration in express terms of the existing philosophy of the statutory provisions relating to recidivism, namely that it is *subsequent* offenses

that are so characterized. For example, *R. S.* 2:103–7 (incorporated in *N. J. S.* 2*A* :85–8) related to conviction of a second offense after the first conviction; *R. S.* 2:103–8 (incorporated in *N. J. S.* 2*A* :85–9) related to a sentence to the State Prison "for a third time," implying release from prison on each of the two prior occasions before the commission of the third offense. The 1940 amendment removed the necessity for *service* of the sentence on the prior conviction, thus placing the emphasis on the event of conviction, but it did not alter the intent to provide opportunity for correction. Thus, whether the Legislature used the words "twice convicted" or convicted "on three separate occasions" it intended that in this respect any subsequent conviction should relate only to an offense or offenses committed *subsequent* to the last prior conviction. The legislative choice of the words "subsequent offense" as used in conjunction with "shall thereafter be convicted" in *L.* 1927, *c.* 263, *sec.* 1, subsequently *R. S.* 2:103–10, and in *R. S.* 2:103–10 as amended in 1940, clearly expresses this intent and the legislative concept of the second and third offender sections, as well as the fourth (habitual) offender section, which initiated in the 1927 act. The 1951 amendment (*N. J. S.* 2*A* :85–8. 9 and 12, *supra*), although providing "thereafter is convicted of an offense" rather than "thereafter be convicted of a *subsequent* offense" (emphasis supplied) as in the antecedent statutory provisions, did not disturb this corrective purpose of the statutes relating to incorrigibles. A contrary view would distort the clear meaning of the paragraph relating to consolidation of offenses for indictment or trial, hereinbefore discussed as to *N. J. S.* 2*A* :85–12, *supra*, and also enacted in *N. J. S.* 2*A* :85–8 and 9, *supra*.

■ The second question involved is whether *N. J. S.* 2*A* :85–12, *supra*, is unconstitutional by reason of uncertainty. The above determination demonstrates that there is no merit in this contention.

■ The third question involved is whether the prosecutor's remarks concerning the necessity for retrial of the defendant in the event the jury were unable to agree consti-

tuted cause for reversal. In view of the result obtaining as a consequence of the interpretation and application of *N. J. S.* 2A :85–12, *supra*, hereinabove expressed, this question is moot. The prosecutor's remarks were uncalled for and should not have been made. Under the circumstances of this case we find that the trial judge's action in instructing the jury properly on the occasion of the prosecutor's remarks was adequate protection for the defendant. We expressly adhere, however, to our opinion in *In re Stern*, 11 *N. J.* 584 (1953).

The final question is whether the trial court erred in permitting the defendant to introduce evidence of the date of his birth in order to attack the 1941 forgery conviction. We are of the opinion that error was not committed in this respect. An order or proceeding in excess of jurisdiction is null and is subject to collateral attack. *Miske v. Habay*, 1 *N. J.* 368, 374 (1949). If the defendant was under the age of 16 at the time of commission of the offense of forgery in April 1941, the Union County Court of Special Sessions lacked jurisdiction to try him therefor. *R. S.* 2 :103–1.

In conclusion, the enactment of laws relating to the philosophy of life imprisonment of persons who have a record of a multiplicity of criminal offenses and their mode of application is constitutionally vested in a coordinate branch of government, the legislative branch. Our province is confined to the determination of the respective rights of the defendant and the State under the pertinent provisions of the law.

For the reasons expressed in this opinion the judgment of conviction as an habitual criminal and the sentence imposed as a consequence thereof are vacated. The cause will be remanded to the Union County Court for the purpose of imposition of sentence in connection with defendant's October 9, 1952 conviction, following appropriate proceedings for determination of defendant's recidivist status.. Let it be noted, however, that the conviction of April 26, 1945 was not, within the principles laid down in this opinion, a conviction for an offense subsequent to defendant's July 29,

1943 conviction and therefore was not a "conviction on a prior occasion" within the intendment of the Habitual Criminals Act.

*For reversal*—Justices HEHER, OLIPHANT, BURLING, JACOBS and BRENNAN—5.

*For affirmance*—Chief Justice VANDERBILT and Justice WACHENFELD—2.