731 A.2d 532 (1999)
322 N.J.Super 512
STATE of New Jersey, Plaintiff-Appellant,
v.
Jimmie Lee THOMAS, Defendant-Respondent.
Superior Court of New Jersey, Appellate Division.
Argued May 17, 1999.
Decided June 25, 1999.
*533 Steven J. Kaflowitz, Assistant Prosecutor, for plaintiff-appellant (Thomas V. Manahan, Union County Prosecutor, attorney; Mr. Kaflowitz, on the brief).
Daniel V. Gautieri, Assistant Deputy Public Defender, for defendant-respondent (Ivelisse Torres, Public Defender, attorney; Mr. Gautieri, of counsel and on the brief).
Before Judges PETRELLA, D'ANNUNZIO and CUFF.[1]
The opinion of the court was delivered by PETRELLA, P.J.A.D.
The State, by the Union County Prosecutor, appeals from the sentence imposed upon a guilty plea, pursuant to a plea agreement,[2] by defendant Jimmie Lee Thomas to second degree sexual assault (N.J.S.A. 2C:14-2b). Thomas was originally charged with both first degree aggravated sexual assault of a female less than thirteen years of age (N.J.S.A. 2C:14-2a(1)) and second degree sexual assault upon that minor by committing one or more acts of sexual contact (N.J.S.A. 2C:14-2b). Under the plea agreement, Thomas admitted touching the victim in her "vaginal area," but not to any penetration. Thomas was determined in the Avenel report not to be a repetitive and compulsive sex offender and was not eligible for a sentence to the Adult Diagnostic and Treatment Center at Avenel. Instead, Thomas was sentenced to a four-year prison term and was given credit for 444 days in jail.
The State argues on appeal that Thomas' sentence is illegally lenient because it does not include the parole ineligibility period mandated by the No Early Release Act (the Act), N.J.S.A. 2C:43-7.2, for "violent crimes."
Thomas was the boyfriend of the eleven-year-old victim's grandmother. The incident giving rise to the indictment took place at the child's home when her mother and grandmother were out shopping and she was alone with Thomas. At the time of the offense Thomas was thirty-nine. According to the victim, she was sitting on *534 a couch with Thomas when he put his pinky finger into her vaginal opening. When Thomas was arrested he denied that he had penetrated the child. There was and is no question that the child did not and could not consent to any type of sexual act or contact.[3]
Thomas pleaded guilty to a count in the indictment charging him with second degree sexual assault on a female under the age of thirteen. As part of the plea agreement the State agreed to the dismissal of various other counts, and took the position that Thomas was subject to the No Early Release Act, if applicable, which would require that Thomas serve a minimum of 85% of his sentence. The plea agreement also contemplated that Thomas could withdraw his plea if the judge ruled that the Act applied to him, but could not withdraw his plea if the judge ruled that it did not apply. Judge Barisonek agreed with Thomas' position and ruled that the Act did not apply.
N.J.S.A. 2C:43-7.2 mandates that an individual sentenced to a prison term upon conviction of an offense of the first or second degree constituting a "violent crime" must serve at least 85% of the term of incarceration imposed by the court before being eligible for parole. The statute reads in relevant part
a. A court imposing a sentence of incarceration for a crime of the first or second degree shall fix a minimum term of 85% of the sentence during which the defendant shall not be eligible for parole if the crime is a violent crime as defined in subsection d. of this section.
* * * *
d. For the purposes of this section, "violent crime" means any crime in which the actor causes death, causes serious bodily injury as defined in subsection b. of N.J.S. 2C:11-1, or uses or threatens the immediate use of a deadly weapon. "Violent crime" also includes any aggravated sexual assault or sexual assault in which the actor uses, or threatens the immediate use of, physical force.

[N.J.S.A. 2C:43-7.2.]
The State argues that under State In Re M.T.S., 129 N.J. 422, 444, 609 A.2d 1266 (1992), the act of sexual contact should be construed as "physical force" because the victim had not given "affirmative and freely-given permission." Of course, a minor, such as the victim here, is considered incapable of giving such permission or consent under our law. See N.J.S.A. 2C:14-2a(1) and -2b. See also State v. Budis, 125 N.J. 519, 537, 593 A.2d 784 (1991); State v. Burden, 203 N.J.Super. 149, 153-155, 495 A.2d 1378 (Law Div.1985). Aside from that, we consider M.T.S. inapposite. That case involved an act of sexual penetration by a seventeen-year-old on a sleeping fifteen-year-old female victim and the Court, in construing the phrase "physical force" as used in N.J.S.A. 2C:14-2c(1), concluded that, under the circumstances presented, just the very force of penetration in the act of committing a rape was sufficient to satisfy the physical force element of second degree sexual assault. However, as noted, here, Thomas only admitted to touching the victim in her "vaginal area," but he did not admit to any penetration and there was no factual finding of a penetration. N.J.S.A. 2C:14-2b. No greater offense can thereafter be assigned to the conviction than that admitted in the plea agreement proceedings, i.e., a second degree sexual assault by the touching. See State v. Pennington, 154 N.J. 344, 362, 712 A.2d 1133 (1998) ("Plea negotiation is an acceptable, legitimate, and fair administration of criminal justice" that is governed by contract law concepts.); State v. MacAlpin, 223 N.J.Super. 299, 302, 538 A.2d 827 (App.Div.1988) ("So long as defendant was made aware of his maximum exposure under the negotiated plea and *535 receives a sentence with no greater exposure, the plea remains unassailable.").
The State in this case takes the position that the No Early Release Act applies in any case where a defendant commits a sexual assault designated as a crime of the first or second degree where the victim does not affirmatively and freely give permission for the act of sexual contact. Under this approach, the Act would apply when the victim is incapable of giving consent, such as in a case of statutory rape. According to the State's argument, it should be irrelevant under the Act that the defendant did not use or threaten the use of physical force in excess of the inherent act of sexual contact. Under this approach almost every sexual assault or sexual contact which was a first or second degree offense would be subject to the Act.
Judge Barisonek rejected the State's arguments and concluded that the No Early Release Act clearly requires an independent act of force or threat of force against the victim that is additional to the constituent elements of the crime. We agree and affirm.
The resolution of this issue involves an interpretation of the definition of "violent crime" in N.J.S.A. 2C:43-7.2d, which by its terms includes as a violent crime any first or second degree offense of "aggravated sexual assault or sexual assault in which the actor uses, or threatens the immediate use of, physical force."
The Act grew out of the introduction in early 1996 of Senate Bill 855 which recited that "an inmate sentenced for a crime of the first or second degree involving violence ... shall not be eligible for parole until the inmate has served not less than 85% of the court-ordered term of incarceration." S-855 (1996).[4] Thus, the bill originally was applicable to any person sentenced for a crime of the first or second degree involving violence. The bill was subsequently amended in the Assembly to narrow the definition of "crime of violence." While the bill was pending, the Governor's Study Commission on Parole examined the State's parole system, including the pending bill. Among the concerns expressed by the Commission was the bill's lack of definition of "crime involving violence." Accordingly, the Commission recommended:
the term should be drawn narrowly to reflect the most dangerous criminal conduct. See, e.g., N.J.S.A. 2C:44-3g, which permits the imposition of an extended term on an offender who commits a sexual assault or criminal sexual contact that involves violence or the threat of violence. As used in that statute [N.J.S.A. 2C:44-3g], a crime involves violence or the threat of violence if the victim sustains serious bodily injury as defined in subsection b. of N.J.S.A. 2C:11-1, or the actor is armed with and uses a deadly weapon or threatened by word or gesture to use a deadly weapon as defined in subsection c. of N.J.S.A. 2C:11-1 or threatens to inflict serious bodily injury.
[Report of the Study Commission on Parole, December 1996 p. 13.]
After the release of the Commission's report the Assembly made three significant changes to the proposed legislation. First, it narrowed the definition of violent crime to adopt the Commission's recommendation that "[t]he term should be drawn narrowly to reflect the most dangerous criminal conduct" by applying the principles expressed in N.J.S.A. 2C:44-3g. Second, it added aggravated sexual assault and sexual assault to the definition of violent crime when the actor uses or threatens the immediate use of physical force. Finally, a post-release supervision period was added to alleviate concerns about the lack of parole supervision once 85% of the offender's sentence was complete. The final version of the bill was approved by *536 the Governor on June 9, 1997 (L. 1997, c. 117, § 6), and became effective that date.
Because M.T.S. was decided in 1992, we presume that the Legislature was aware of that case and would not have included the additional qualifying language that "violent crime" also includes aggravated sexual assault or sexual assault if it was not intended to have significance. See State v. McCall, 14 N.J. 538, 547, 103 A.2d 376 (1954) (In construing a statute it is assumed that the Legislature is thoroughly conversant with its own legislation and the judicial construction thereof.); State v. Alexander, 184 N.J.Super. 615, 622, 446 A.2d 1257 (Law Div.1981) (citing Brewer v. Porch, 53 N.J. 167, 174, 249 A.2d 388 (1969) (There is "an assumption that the Legislature is thoroughly conversant with its own legislation and judicial construction of its statutes.")). As Judge Barisonek stated:
It is reasonable to assume that the Legislature was aware of M.T.S. and, therefore, the Legislature would not have included the additional language. The Legislature would simply state that the definition of the crime for the purpose of the No Early Release Act includes all aggravated sexual assault or sexual assaults under M.T.S. If that's what the Legislature wanted to do, that's all they had to say. It concludes "all aggravated sexual assaults or sexual assaults." It would not specifically enumerate a situation where "the actor uses or threatens the immediate use of physical force" because that requirement would be satisfied automatically under M.T.S. when it involves an act of penetration or where it involves an act of sexual contact if there is lack of consent.
It is clear that general principles of statutory construction support the view that the additional language was not surplusage. State v. Reynolds, 124 N.J. 559, 564, 592 A.2d 194 (1991); State v. Butler, 89 N.J. 220, 226, 445 A.2d 399 (1982). Moreover, general principles of statutory construction mandate strict construction of a criminal statute. State v. Galloway, 133 N.J. 631, 658-659, 628 A.2d 735 (1993) (citing State v. Valentin, 105 N.J. 14, 17, 519 A.2d 322 (1987) and State v. Carbone, 38 N.J. 19, 23-24, 183 A.2d 1 (1962)). When the words of the statute are ambiguous, the court looks to the underlying intent of the Legislature and for that purpose may consider available legislative history and the context of the statute. State In Re M.T.S., supra (129 N.J. at 431, 609 A.2d 1266); State v. Madden, 61 N.J. 377, 389, 294 A.2d 609 (1972); State v. Costagliola, 144 N.J.Super. 589, 599, 366 A.2d 738 (Cty.Ct.1976) ("Where the legislative intent is clear, it must be given effect regardless of inaccuracies of language.").
The No Early Release Act defines a violent crime to include "any aggravated sexual assault or sexual assault in which the actor uses, or threatens immediate use of, physical force." An act of sexual penetration or sexual contact is required to establish an aggravated sexual assault or a sexual assault. Under the State's interpretation of the Act, the additional language of subsection d, which states "in which the actor uses, or threatens the immediate use of, physical force," would be surplusage. Such a reading would be disfavored and would not give effect to all of the language of the statute. State v. Reynolds, supra (124 N.J. at 564, 592 A.2d 194); Norman J. Singer, Sutherland Statutory Construction § 46.06 (5th ed.1992). It is thus reasonable to presume that the Legislature attributed significance to the terms that it added to the statute and that the physical force or threat of physical force had to be an independent act from the coordinate act of sexual contact that must be involved in the criminal offense in order to trigger the application of the Act to such crimes. Cf. State v. Burford, 321 N.J.Super. 360, 365, 729 A.2d 52 (App.Div. 1999).
It is true, as the State argues, that M.T.S. examined the concept of "physical force" in the context of a sexual assault. *537 See N.J.S.A. 2C:14-2c(1). We reject, however, the State's attempted application of the discussion of "physical force" in that case to any type of sexual touching which is not consensual.[5] Rather, we conclude that physical force in the No Early Release Act means force used to overcome a lack of consent, and which is a separate force, perhaps violent, but independent from the "simple" act of the sexual touching, or just the very act of penetration as in the case of M.T.S. The Court in M.T.S., said:
Because the statute eschews any reference to the victim's will or resistance, the standard defining the role of force in sexual penetration must prevent the possibility that the establishment of the crime will turn on the alleged victim's state of mind or responsive behavior. We conclude, therefore, that any act of sexual penetration engaged in by the defendant without the affirmative and freely-given permission of the victim to the specific act of penetration constitutes the offense of sexual assault. Therefore, physical force in excess of that inherent in the act of sexual penetration is not required for such penetration to be unlawful. The definition of "physical force" is satisfied under N.J.S.A. 2C:14-2c(1) if the defendant applied any amount of force against another person in the absence of what a reasonable person would believe to be affirmative and freely-given permission to the act of sexual penetration.

[129 N.J. at 444, 609 A.2d 1266.]
This case is not like M.T.S. where the act of penetration satisfied the element of the offense. Under the plea agreement and the conviction there was neither a finding nor admission of penetration or physical force or threat of the use of immediate physical force independent of the sexual contact. Hence, the statute does not apply. As stated by Judge Barisonek:
So the mere fact a crime is considered to be violent by nature or involves force in and of itself does not mean it is included under the No Early Release Act. The crime still must meet the definition of a violent crime under the Act. Aggravated sexual assault or sexual assault does not meet that definition unless the actor uses or threatens the immediate use of physical force.
The State is reading the application of M.T.S. too broadly to fit the specific definition as delineated in the No Early Release Act. The violence or threat of violence that the Legislature seeks to punish more severely is the circumstance where the actor uses force or threats of force independent of an act of penetration or contact against the victim. The physical force or intimidation to compel the victim to submit is what the Act seems to want to punish more severely. It seeks to punish more severely the violent offender, not the statutory rapist, or the incestuous defendant who does not resort to violence or threat of violence.
There are cases where there would be factual issues that develop in a given situation as to whether there was force used or whether there was consent involved, and I'm not so sure the State is willing to concede the issue the defense raisesI shouldn't say it that way. I'm not sure every defendant will be willing to concede the issue of consent and I think it's clear that's why you have to have a hearing under the Act to see whether it applies. If it had applied *538 automatically in every aggravated sexual assault, if it applied automatically in every sexual assault involving contact, and the issue of consent was not in the case, meaning it's conceded, why do you have to have a hearing if it applies automatically? I don't think that's what the Legislature intended. That is why the Act requires a hearing to decide these issues as to its applicability and it's not automatic in any situation, even in spite of M.T.S. If every act of penetration or every act of sexual contact met the definition, why would a hearing be required?
I find for those reasons, therefore, that since there is nothing in this record to demonstrate an independent act of force or threat of force against the victim and I find even though it only involves a circumstance of an illegal and unlawful touching, without consent of the victim, the Act still does not apply under the terms of M.T.S. Therefore, I am denying the State's request to apply the 85 percent provision to this defendant.
Our review of a sentence is usually limited to whether the determination of the sentencing factors was appropriate, whether the determination was supported by competent evidence in the record, and whether the sentence is so unreasonable that it shocks the judicial conscience. State v. O'Donnell, 117 N.J. 210, 215-216, 564 A.2d 1202 (1989); State v. Roth, 95 N.J. 334, 364-365, 471 A.2d 370 (1984). The instant case it also involves legal issues of the interpretation and impact of additional statutory provisions which would enhance the punishment imposed. Here, there was no error in Judge Barisonek's sentencing decision, and particularly his decision finding the provisions of the No Early Release Act inapplicable.
Affirmed.
NOTES
[1] Judge Cuff did not participate in oral argument, but has been added to the appeal with the consent of the parties.
[2] The record reflects that the judge accepted the plea agreement because of the wishes of the victim and her mother and because the State's case had proof problems.
[3] On the insistence of the State, at the sentencing hearing Thomas stipulated that the victim did not give "consent" to the sexual offense.
[4] The 85% apparently arose from the requirements of 42 U.S.C. § 13702, enacted in 1994. See 42 U.S.C.A. § 13701 (as amended in 1996) for a definition of "part 1 violent crime."
[5] We note in passing, if the State's argument was accepted, anomolies in sentencing various sexual offenses would likely occur. For example, because aggravated criminal sexual contact (N.J.S.A. 2C:14-3a) is only a third degree crime, even if physical force is used, the offense would not be subject to the No Early Release Act which only applies to first and second degree crimes. See N.J.S.A. 2C:43-7.2a. A similar situation arises under the fourth degree offense of criminal sexual contact (N.J.S.A. 2C:14-3b), when, under 2C:14-2c(1), "[t]he actor uses physical force or coercion, but the victim does not sustain severe personal injury."