742 A.2d 614 (2000)
327 N.J.Super. 50
STATE of New Jersey, Defendant-Respondent,
v.
David J. MEYER, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Submitted December 8, 1999.[1]
Decided January 3, 2000.
*615 Ivelisse Torres, Public Defender, for defendant-appellant, (J. Michael Blake, Assistant Public Defender, of counsel and on the brief).
John J. Farmer, Jr., Attorney General, for defendant-respondent, (Wendy Alice Way, Deputy Attorney General, of counsel and on the brief).
Before Judges STERN and STEINBERG.
The opinion of the court was delivered by STERN, P.J.A.D.
This appeal requires us to consider whether a pellet gun is a "deadly weapon" for purposes of N.J.S.A. 2C:43-7.2, thereby requiring the imposition of a parole ineligibility term of 85% of the sentence imposed. We hold that the parole ineligibility term was properly imposed and affirm defendant's sentence for committing an armed robbery with the gun.
Defendant pled guilty to first degree armed robbery, N.J.S.A. 2C:15-1a(2) (count one), possession of a handgun without a permit, N.J.S.A. 2C:39-5b (count three), and theft from the person, N.J.S.A. 2C:20-3a (count five), in exchange for a recommendation of concurrent sentences with a maximum term of twelve years in custody, 85% of which was to be served without parole eligibility, and the payment of restitution. He received a twelve-year sentence on the armed robbery conviction and concurrent sentences for the other two convictions, each concurrent with another sentence then being served. While the judgment does not so provide, the "statement of reasons" for the sentence reflects a ten-year, two-month parole ineligibility term. Mandatory fees and penalties were also imposed.
In entering his guilty plea, defendant admitted committing an armed robbery *616 with a pellet gun.[2] Count five dealt with the theft of more than $500, and at the oral argument before us on the Oral Argument Sentencing Calendar, the State conceded that count five must merge into count one because the theft was the subject of the robbery. We permitted supplementary briefing on the question of whether the pellet gun constituted a "deadly weapon" for purposes of N.J.S.A. 2C:43-7.2, hereinafter called the No Early Release Act ("NERA").
At the time of the plea, defense counsel stated that he had concluded "that the minimum mandatory parole ineligibility for a 12 [year sentence as recommended by the prosecutor] under this rule would be approximately ten years and two months." Defense counsel appears to have conceded that this case would fall under NERA. After being asked about his potential exposure for the three offenses, defendant acknowledged that he "freely and voluntarily" answered the questions on "the original plea form" and supplemental plea form with respect to the No Early Release Act. In addition, he gave a factual basis for the offenses, acknowledging that he robbed a liquor store while in "possess[ion] of a CO200.177 caliber pellet gun" for which he had no "license," although he understood that a license was necessary to possess such a gun. Moreover, he said that he "demanded the money or asked [the person behind the cash register] for the money and showed him the gun."
While defendant acknowledged the maximum sentence for each offense for which he was charged, and acknowledged that he was exposed to a maximum sentence of thirty years and $115,000 in fines but for the prosecutor's recommendation, he was never specifically asked on the record if he understood his maximum sentence under the negotiated plea or whether he knew he had to serve 85% of his sentence before being eligible for parole. Rather, he acknowledged signing the plea form which stated "State recommends a 12 year term of incarceration with 85% to be served before parole eligibility...." He also acknowledged executing the "Supplemental Plea Form for No Early Release Act Cases," and by doing so indicated that he was pleading guilty to a "first or second degree violent crime," and specifically to robbery in the first degree. Furthermore, he acknowledged that he would "be required to serve 85% of the sentences imposed for that offense(s) before [he would] be eligible for parole on that offense(s)," and that by pleading guilty "the minimum mandatory period of parole ineligibility is 10 years and 2 months ... and the maximum period of parole ineligibility can be 12 years and 0 months,"[3] which "cannot be reduced by good time, work or minimum custody credits." He also indicated that he faced a minimum "5 year term of parole supervision."
I.
Defendant does not challenge the lack of development on the record of his sentence exposure under NERA. We nevertheless believe that, notwithstanding the plea form defendant executed, the trial judge should have reviewed the subject with defendant personally before accepting his guilty plea. See State v. Kovack, 91 N.J. 476, 483-84, 453 A.2d 521 (1982). See also R. 3:9-2. However, because of the specificity of the questions on the supplemental plea form and defendant's acknowledgment of his knowing and voluntary execution thereof, we do not believe he can *617 attack the parole ineligibility term on that basis in this case. See State v. Rumblin, 326 N.J.Super. 296, 300, 741 A.2d 138 (App.Div.1999).
If a defendant acknowledges at the time of his guilty plea that NERA applies, a question exists as to whether he can subsequently challenge its application on appeal. Clearly, cases like State v. Warren, 115 N.J. 433, 558 A.2d 1312 (1989), and State v. Spinks, 66 N.J. 568, 334 A.2d 23 (1975), which deal with the defendant's right to appeal from a negotiated sentence, are distinguishable from the present case dealing with the validity of a required parole ineligibility term. We nevertheless conclude that the challenge before us is cognizable on appeal because we are dealing essentially with an issue of sentence legality which can be raised even on collateral attack. See R. 3:22-2(c). See also State v. Peters, 129 N.J. 210, 216-17, 609 A.2d 40 (1992); State v. Vasquez, 129 N.J. 189, 194-95, 609 A.2d 29 (1992).[4]
II.
Before us, defendant argues:
BECAUSE THE MANDATORY PAROLE INELIGIBILITY PROVISION OF THE "NO EARLY RELEASE" ACT DOES NOT APPLY TO ALL FIREARMS, THE COURT ERRED IN IMPOSING AN 85% DISQUALIFIER WITHOUT HOLDING A HEARING AS TO WHETHER THE PELLET GUN UTILIZED BY DEFENDANT WAS A "DEADLY WEAPON" AS DEFINED BY THE "NO EARLY RELEASE" ACT.
Whether a defendant used or threatened the immediate use of a "firearm" must be developed at a NERA hearing under N.J.S.A. 2C:43-7.2e, particularly if not resolved at the time of plea or by the fact finder when use or threatened use of a firearm is not an element of the offense. See, e.g., State v. Stewart, 96 N.J. 596, 605-06, 477 A.2d 300 (1984); cf. State v. Martin, 110 N.J. 10, 538 A.2d 1229 (1988). However, we disagree with defendant's contention on this appeal that NERA does not apply to all "firearms." Hence if a first or second degree crime involves the use or threat of immediate use of a "firearm," NERA applies.
N.J.S.A. 2C:43-7.2 provides that a parole ineligibility term of 85% must be imposed for a first or second degree "violent crime." N.J.S.A. 2C:43-7.2d provides in relevant part:
For the purposes of this section, "violent crime" means any crime in which the actor causes death, causes serious bodily injury as defined in subsection b. of N.J.S.[A.] 2C:11-1, or uses or threatens the immediate use of a deadly weapon....
For the purposes of this section, "deadly weapon" means any firearm or other weapon, device, instrument, material or substance, whether animate or inanimate, which in the manner it is used or is intended to be used, is known to be capable of producing death or serious bodily injury.
As part of a mandatory sentencing provision, this section of NERA "must be strictly construed." See State v. Johnson, 325 N.J.Super. 78, 90, 737 A.2d 1140 (App.Div. 1999). See also, e.g., State v. Thomas, 322 N.J.Super. 512, 518, 731 A.2d 532 (App. Div.1999).
The definition of "deadly weapon" in N.J.S.A. 2C:43-7.2 is the same as the definition was in N.J.S.A. 2C:11-1 at the time of the offense in State v. Butler, 89 N.J. 220, 229, 445 A.2d 399 (1982). In Butler the defendant pretended to have a gun in committing a robbery, but was unarmed. The Court held that, as "deadly weapon" was then defined in N.J.S.A. 2C:11-1(c), there could be no armed robbery based on a victim's mere perception that the assailant *618 had a weapon. Butler, supra, 89 N.J. at 229, 445 A.2d 399. Indeed, the Court found the "objective presence of a deadly weapon" was needed to give rise to an armed robbery. Id. at 230, 445 A.2d 399. However, the Court did not hold that a firearm was not a "deadly weapon."
The term "firearm" is defined in N.J.S.A. 2C:39-1f. It provides:
"Firearm" means any handgun, rifle, shotgun, machine gun, automatic or semiautomatic rifle, or any gun, device or instrument in the nature of a weapon from which may be fired or ejected any solid projectable ball, slug, pellet, missile or bullet, or any gas, vapor or other noxious thing, by means of a cartridge or shell or by the action of an explosive or the igniting of flammable or explosive substances. It shall also include, without limitation, any firearm which is in the nature of an air gun, spring gun or pistol or other weapon of a similar nature in which the propelling force is a spring, elastic band, carbon dioxide, compressed or other gas or vapor, air or compressed air, or is ignited by compressed air, and ejecting a bullet or missile smaller than three-eighths of an inch in diameter, with sufficient force to injure a person.
[N.J.S.A. 2C:39-1f.]
Similarly, N.J.S.A. 2C:11-1c defines "deadly weapon" as "any firearm or other weapon, device, instrument, material or substance, whether animate or inanimate, which in the manner it is used or is intended to be used, is known to be capable of producing death or serious bodily injury...."
In State v. Mieles, 199 N.J.Super. 29, 36-40, 488 A.2d 235 (App.Div.), certif. denied, 101 N.J. 265, 501 A.2d 933 (1985), we held that a BB gun was a "firearm" and "deadly weapon," because it can cause "serious bodily injury."[5]See also State v. Gantt, 101 N.J. 573, 583-85, 589, 503 A.2d 849 (1986) (holding "that the Graves Act requirement that the State prove that the weapon involved was a `firearm' requires neither proof nor a court finding that the weapon was operable." Rather, the court need only be "satisfied" that the weapon "was originally designed to deliver a potentially-lethal projectile" in order to render a weapon a "firearm"); State v. Riley, 306 N.J.Super. 141, 146-47, 149, 703 A.2d 347 (App.Div.1997) (noting that "[f]irearms are per se deadly weapons"); State v. McCandless, 190 N.J.Super. 75, 77, 83-84, 461 A.2d 1205 (App.Div.1983) (summarily rejecting claim that a BB gun is not a "firearm" for purposes of conviction under N.J.S.A. 2C:39-5b).
The Legislature is presumed to have known the interpretation we have given to the definition of "deadly weapon" when it used virtually the identical language to define that term in N.J.S.A. 2C:43-7.2. State v. Thomas, supra, 322 N.J.Super. at 518, 731 A.2d 532 (citing State v. McCall, 14 N.J. 538, 547, 103 A.2d 376 (1954) for the proposition that "[i]n construing a statute it is assumed that the Legislature is thoroughly conversant with its own legislation and the judicial construction thereof."). Moreover, "[i]n discerning [the Legislature's] intent we consider not only the particular statute in question, but also the entire legislative scheme of which it is a part." Alan J. *619 Cornblatt, P.A. v. Barow, 153 N.J. 218, 234, 708 A.2d 401 (1998) (quoting Kimmelman v. Henkels & McCoy, Inc., 108 N.J. 123, 129, 527 A.2d 1368 (1987)).
Indeed, in enacting the NERA, the Legislature adopted recommendations made in 1996 by the Governor's Study Commission on Parole, which examined the parole system and the NERA legislation then pending. Thomas, supra, 322 N.J.Super. at 517, 731 A.2d 532. The Commission defined a violent crime as stated in N.J.S.A. 2C:44-3g, which provides, in part, that a violent crime occurs when "the actor is armed with and uses" or threatens "to use a deadly weapon as defined in subsection c. of N.J.S.A. 2C:11-1." Ibid . (citing Report of the Study Commission on Parole, December 1996, p. 13).
In his plea, defendant admitted his use of a pellet gun at the time of the robbery. He simultaneously pled guilty to possession of a handgun without a permit, N.J.S.A. 2C:39-5b, which means he admitted that the gun was a "firearm." N.J.S.A. 2C:39-1f. Defendant did not repudiate the plea or seek to withdraw it, at or before sentencing, or before us. Given the admission that defendant's pellet gun was a "firearm," it was a "deadly weapon" for purposes of NERA. Thus, the failure to conduct a NERA hearing was harmless in this case. See N.J.S.A. 2C:43-7.2e.
The sentence, including the NERA ineligibility term on the armed robbery, is affirmed.[6] The conviction on count five is merged therein. The matter is remanded for correction of the judgment. As modified, the judgment is affirmed.
NOTES
[1] This case was originally argued on the Oral Argument Sentencing Calendar of September 15, 1999, and was submitted on December 8, 1999, following the filing of briefs directed to the issue developed herein.
[2] At sentencing, defendant called the gun "a BB gun." See N.J.S.A. 2C:43-7.2e regarding the need for a hearing under N.J.S.A. 2C:43-7.2, which requires a parole ineligibility term of 85% for "persons convicted of certain violent crimes." The parties appear to agree that any difference between a pellet gun and a BB gun is immaterial.
[3] The ten-year, two-month ineligibility term was the required minimum for the recommended sentence. It is not clear what the twelve-year reference was based on, but no one suggests that any prejudice flowed to defendant by virtue of that reference.
[4] In light of our disposition we need not address whether the prosecutor could seek to withdraw the negotiated disposition were we to vacate the NERA ineligibility term which was acknowledged as part of the negotiated plea.
[5] In Mieles, the court had to decide if the gun was a "firearm" and "handgun" for purposes of N.J.S.A. 2C:12-1b(4) and 2C:39-5b, and if it was a "deadly weapon" for purposes of the grading provisions of the robbery statute, N.J.S.A. 2C:15-1b. The court upheld each conviction. With respect to the robbery, the court noted that "[t]he gun was loaded, operable and ejected BB's," Mieles, supra, 199 N.J.Super. at 40, 488 A.2d 235, and that the jury's conviction of first degree robbery was warranted. Ibid. But Mieles also held that a BB gun was a "firearm," as defined in N.J.S.A. 2C:39-1f, independent of being loaded or operable. Id. at 37-38, 488 A.2d 235. The Mieles court concluded that a BB gun could cause serious injury "if a BB struck a person in the eye," id. at 37, 488 A.2d 235. See also Marinelli v. K-Mart, 318 N.J.Super. 554, 724 A.2d 806 (App.Div.), certif. granted, 161 N.J. 331, 736 A.2d 524 (1999) (where boy lost his eye from a BB gunshot wound).
[6] The ineligibility term should be related to the specific sentence to which it applies.