752 A.2d 378 (2000)
331 N.J. Super. 497
STATE of New Jersey, Plaintiff,
v.
Jose PEREZ, Defendant.
Superior Court of New Jersey, Law Division (Criminal), Union County.
Decided February 4, 2000.
*379 Paul Condon, Assistant Prosecutor, for the State.
Theodore M. Kravitz, Newtown, for the defendant.
BARISONEK, J.S.C.
The defendant was tried and convicted of Count 1, N.J.S.A. 2C:15-1, Robbery, First Degree, Count 2, N.J.S.A. 2C:39-5(b), Unlawful Possession of a Weapon, Third Degree, and Count 3, N.J.S.A. 2C:39-4(a), Possession of a Weapon for an Unlawful Purpose. The State made an application to sentence the defendant under the No Early Release Act (N.E.R.A.), N.J.S.A. 2C:43-7.2.
The State alleged that the defendant, on August 11, 1997, approached the victim and pointed a handgun at the victim, demanding certain items of personal property. The defendant was arrested a short time afterwards as he was hiding the handgun on a porch.
A firearm expert testified at trial that the handgun, as originally designed, was capable of discharging a bullet, but did not have a trigger. The expert further testified that the handgun could be repaired without much difficulty, but it would require the person to possess some knowledge about handguns and repair. The defense alleged that the victim confronted the defendant with a handgun and the defendant disarmed the victim and walked away with the gun. Neither intoxication nor diminished capacity was an issue in the trial.
The defendant, at sentencing, requested a hearing under the N.E.R.A., pursuant to N.J.S.A. 2C:43-7.2(e), on two issues. The first issue was whether the handgun had to be operable to qualify as a deadly weapon under the Act. The second issue was whether the defendant had the capacity to formulate an intent to commit a violent crime under the Act, due to a diminished mental capacity and/or intoxication. The defendant, at the hearing, testified he had been previously diagnosed as schizophrenic, had been hospitalized in the past for the condition and was under current medical treatment. He further testified that he abused alcohol, heroin and cocaine, and was under the influence of a controlled dangerous substance at the time of the incident. The State relied upon the trial testimony to support the application of the No Early Release Act.
The defense, to support its position, cited State v. Burford, 321 N.J.Super. 360, 729 A.2d 52 (App.Div.1999), aff'd, 163 N.J. 16, 746 A.2d 998 (2000), which held that a defendant, during an eluding, must intend to use a stolen automobile as a deadly weapon to meet the definition of a deadly weapon under the N.E.R.A. and subject the defendant to enhanced punishment under the Act. The defense also relied upon State v. Martel Johnson, 325 N.J.Super. 78, 737 A.2d 1140 (App.Div.1999), cert. denied 163 N.J. 12, 746 A.2d 458 (2000), which held that purely possessory crimes, such as second degree possession of a firearm with intent to use it unlawfully against another, are excluded from sentencing under N.E.R.A. because the defendant *380 must have used the weapon and not just have an intent to use the weapon. The defense's position was that the State must prove that the defendant had the necessary intent to commit a violent crime as defined by the statute, and in fact, committed a violent crime.
Both of these cases are distinguishable. The defendant in Johnson did not actually use or threaten the immediate use of a deadly weapon and only possessed it with an intent to use it unlawfully. Furthermore, the jury in both cases never found the defendants guilty of a crime which has as an element that the defendant actually used or threatened the immediate use of a deadly weapon. The jury in Burford found the defendant guilty of eluding, but did not find that the vehicle was a deadly weapon since the use of a deadly weapon is not an element of the offense. The defendant in the Johnson case was found guilty of possession with intent to use a deadly weapon, but the jury did not find the defendant guilty of using or threatening the use of a deadly weapon since it is not an element of the offense. The jury, however, with a first degree robbery has found that the State has proven beyond a reasonable doubt as an element, that there was a violent crime and that the defendant used or threatened the immediate use of a deadly weapon, as required by the N.E.R.A. The issue of intent, therefore, does not require further hearing under the Act. This is supported by State v. David Meyer, 327 N.J.Super. 50, 55, 742 A.2d 614 (App. Div.2000), which says:
"Whether a defendant used or threatened the immediate use of a `firearm' must be developed at a N.E.R.A. hearing under N.J.S.A. 43-7.2e, particularly if not resolved at the time of plea or by the fact-finder when use or threatened use of a firearm is not an element of the offense." citing State v. Stewart, 96 N.J. 596, 605-06, 477 A.2d 300 (1984); cf. State v. Martin, 110 N.J. 10, 538 A.2d 1229 (1988).
The defense, at trial, decided not to offer evidence of intoxication and diminished capacity, and the jury decided beyond a reasonable doubt that the defendant intended to use the firearm during the robbery. The issue, therefore, has already been decided. The defense cannot have a second bite of the apple. The defendant's state of mind and intent is not an issue to be determined at the N.E.R.A. hearing since the jury found the defendant used or threatened the use of a firearm at the time he committed the robbery.
The remaining issue is whether the particular gun used by the defendant qualifies as a deadly weapon under N.J.S.A. 2C:43-7.2(d), since it did not have a trigger at the time of the commission of the crime. This is an issue of first impression under the N.E.R.A., although the issue has previously been decided under the Graves Act. N.J.S.A. 2C:43-6(c).
The Graves Act adopts the definition of a firearm as stated in N.J.S.A. 2C:39-1. The N.E.R.A. defines a deadly weapon as "... any firearm or other weapon, device, instrument, material or substance, whether animate or inanimate, which in the manner it is used or is intended to be used, is known to be capable of producing death or serious bodily injury." N.J.S.A. 2C:43-7.2(d). Obviously, a deadly weapon includes a firearm and a firearm includes a handgun. A deadly weapon under N.J.S.A. 2C:11-1(c) includes the additional language "... or which in the manner it is fashioned would lead the victim reasonably to believe it to be capable of producing death or serious bodily injury." The N.E.R.A. does not include this language and the Legislature, therefore, by excluding this language, intended that the Act apply to real guns. This was the reasoning espoused in State v. Meyer, 327 N.J.Super. at 56, 742 A.2d 614, when the court said, "[h]ence, if a first or second degree crime involves the use or threat of immediate use of a `firearm,' N.E.R.A. applies."
*381 Both the Graves Act and the N.E.R.A. seek to impose more severe penalties upon a defendant when using a deadly weapon. There must be an independent determination under the Graves Act, that the defendant used a deadly weapon/firearm based on consideration of all relevant material. See State v. Palmer, 211 N.J.Super. 349, 511 A.2d 1212 (App.Div. 1986). This is also true under the N.E.R.A. See State v. Meyer, 327 N.J.Super. 50, 742 A.2d 614. The Graves Act further provides that whether a gun is real can be inferred from the appearance based on lay testimony and the State need not even recover the weapon. See State v. Gantt, 101 N.J. 573, 589-90, 503 A.2d 849 (1986). The fact that a firearm is inoperable is irrelevant. See id. at 584-85, 503 A.2d 849. There is nothing in the Graves Act statute to say that the firearm must be operable. Neither is there anything in the N.E.R.A. to indicate that the legislature intended that a firearm, which is a deadly weapon, be operable. Since both statutes seek to punish more severely defendants who use firearms, the statutes should be similarly interpreted. General principles of statutory construction mandate strict construction of a criminal statute. See State v. Galloway, 133 N.J. 631, 628 A.2d 735 (1993) (citing State v. Valentin, 105 N.J. 14, 17, 519 A.2d 322 (1987)). The N.E.R.A., like the Graves Act, is silent as to operability. As stated in State v. Ferencsik, 326 N.J.Super. 228, 741 A.2d 101 (App.Div.1999) (citing Essex Crane Rental Corp. v. Director, Division on Civil Rights, 294 N.J.Super. 101, 108, 682 A.2d 750 (App.Div.1996)), you must first look to the plain meaning of a statute to effectuate legislative intent. When words of a statute are ambiguous, the court must look to the underlying intent of the legislature and consider available legislative history. See State v. Thomas, 322 N.J.Super. 512, 731 A.2d 532 (App.Div.1999). As discussed in Thomas, 322 N.J.Super. at 517, 731 A.2d 532, the legislative history and amendments of the N.E.R.A. show that the bill intended a narrow definition of a violent crime to reflect the most dangerous criminal activity. Clearly, a robbery with a deadly weapon is a dangerous violent crime and fits within the legislative intent. Furthermore, it is reasonable to assume that the legislature was aware of the definition of a firearm under the Graves Act, N.J.S.A. 2C:39-1, and that the definition of a deadly weapon includes a firearm. It is also reasonable to assume that the legislature was aware of the Gantt decision, which said a firearm need not be operable under the Graves Act. It stands to reason, therefore, that if the Legislature intended that the firearm/deadly weapon be operable under the N.E.R.A., it would have said so. Rather the Legislature defines a deadly weapon as "any firearm or other weapon....which in the manner it is used or intended to be used is known to be capable of producing death or serious bodily injury." N.J.S.A. 2C:43-7.2(d). This is consistent with the interpretation of a firearm under Gantt. "The Graves Act incorporates a definition of `firearm' not in terms of operability, but in terms of what the weapon was designed to do." Gantt, 101 N.J. at 583, 503 A.2d 849. A handgun or firearm is a deadly weapon as designed and in the manner it is used or intended to be used is capable of producing death or serious bodily injury and therefore meets the definition of a deadly weapon, even if it is inoperable as defined by Gantt. The N.E.R.A. seeks to punish offenders who use deadly weapons which include firearms, meaning real guns which, as designed, are capable of inflicting serious bodily injury or death. As stated in Gantt, 101 N.J. at 583, 503 A.2d 849, under the Graves Act and as shown through the legislative history of the N.E.R.A., the emphasis is on reducing death and serious bodily injury through enhanced punishment.
Operability of a firearm is relevant only if there is substantial evidence produced to show that (1) the device is of innocuous design or (2) the device has undergone such substantial alteration or *382 mutilation that it has completely and permanently lost the characteristics of a real gun. See Gantt, 101 N.J. at 590, 503 A.2d 849. The Gantt opinion cites State v. Morgan 121 N.J.Super. 217, 220, 296 A.2d 539 (App.Div.1972), which held that a firearm is still a firearm if it is rendered temporarily inoperable by need of some minor repair or adjustment. See Gantt 101 N.J. at 589, 503 A.2d 849. The same theory should apply under the N.E.R.A. since a firearm is part of the definition of a deadly weapon, and therefore, is analogous to the Graves Act. Also, both Acts are seeking to enhance punishment to violent offenders who commit violent crimes involving firearms. It is held, therefore, that since the defendant's weapon fits the definition of a firearm, and since a firearm is considered a deadly weapon, it is of no consequence that it was temporarily inoperable because it did not have a trigger. The handgun, per the testimony of the expert, maintained the permanent characteristics of a firearm, and with relatively minor repair was capable of discharging a bullet. The State, therefore, has met its burden of proving beyond a reasonable doubt either per State v. Ainis, 317 N.J.Super. 127, 721 A.2d 329 (Law Div.1998), or under N.J.S.A. 2C:1-13(d) that the weapon used was a deadly weapon under N.J.S.A. 2C:43-7.2(d).