STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT, v. ERNEST JESSE HAWKS, DEFENDANT–APPELLANT.

Argued May 2, 1988—Decided March 23, 1989.

*Edward P. Hannigan,* Assistant Deputy Public Defender, argued the cause for appellant (*Alfred A. Slocum,* Public Defender, attorney).

*Debra L. Stone,* Deputy Attorney General, argued the cause for respondent (*Cary Edwards,* Attorney General of New Jersey, attorney).

The opinion of the Court was delivered by

CLIFFORD, J.

At issue on this appeal, here as of right because of a dissent below, see *Rule* 2:2–1(a)(2), are the mandatory extended-term provisions of the Graves Act, *N.J.S.A.* 2C:43–6c and *N.J.S.A.* 2C:44–3d. The precise question is whether those provisions apply to a defendant whose first Graves Act offense is the subject of his second Graves Act conviction.

The majority in the Appellate Division, in an opinion reported at 214 *N.J.Super.* 430 (1986), upheld the trial court's imposition of an extended term, a result consistent with *State v. Windsor,* 205 *N.J.Super.* 450 (Law Div.1985). The dissenter below held that enhanced punishment was not mandated, given the chronology of offenses and convictions, a determination foreshadowed by the overruling of *Windsor* in *State v. Lightfoot,* 208 *N.J.Super.* 475, 479 (App.Div.1986). (*Lightfoot* was authored by the dissenting member of the panel that heard this case. The author of *Windsor* was another member of the same panel.)

We agree with the majority below that one of the primary purposes of the Graves Act is "[d]eterrence against second or multiple crimes involving use or possession of a firearm," 214 *N.J.Super.* at 434–35, and that that purpose is served not only by exposing to a mandatory extended term the offender who commits a firearms offense after a prior conviction of a firearms offense, *id.* at 435, but also by "exposing to a mandatory extended term *anyone guilty of multiple firearms offenses, whatever the chronology of his convictions.*" *Ibid.* (emphasis added). Hence we affirm.

I

The Graves Act provides, generally, that "one who uses or possesses a firearm while committing, attempting to commit, or fleeing after the commission of, certain serious offenses specified in the Act shall be mandatorily sentenced to prison for a term that includes three years of parole ineligibility." *State v. Des Marets*, 92 *N.J.* 62, 64 (1983) (footnote omitted); *N.J.S.A.* 2C:43–6c. The cited statutory section further provides:

> A person who has been convicted of an offense enumerated by this subsection and who used or possessed a firearm during its commission, attempted commission or flight therefrom and who has been previously convicted of an offense involving the use or possession of a firearm as defined in 2C:44–3d., shall be sentenced by the court to an extended term as authorized by 2C:43–7c., notwithstanding that extended terms are ordinarily discretionary with the court.

The "extended term" referred to in *N.J.S.A.* 2C:43–6c must be imposed on any defendant who is at least eighteen-years old and has previously been convicted of any of the offenses enumerated in *N.J.S.A.* 2C:44–3d. Finally, the definition of "prior conviction of a crime" is contained in *N.J.S.A.* 2C:44–4b:

> An adjudication by a court of competent jurisdiction that the defendant committed a crime constitutes a prior conviction, although sentence or the execution thereof was suspended, provided that the time to appeal has expired and that the defendant was not pardoned on the ground of innocence.

Defendant, Ernest Hawks, has twice been convicted of Graves Act offenses. His second Graves Act offense was committed in March 1983, during the course of an armed

robbery in which he participated while on bail for his first Graves Act offense. On entry of a guilty plea Hawks was convicted in July 1983 of first-degree armed robbery, *N.J.S.A.* 2C:15–1, for this second Graves Act offense. Consequently, the court sentenced defendant to fifteen years in prison, subject to a five year Graves Act parole disqualifier pursuant to *N.J.S.A.* 2C:43–6c.

In October 1984 a second judgment of conviction was entered against Hawks, this time for criminal activities that had occurred in July and September of 1982 and, as such, represented defendant's first Graves Act offense. Specifically, Hawks was convicted of second-degree conspiracy to commit aggravated assault, *N.J.S.A.* 2C:5–2; second-degree aggravated assault, *N.J.S.A.* 2C:12–1b(1), into which the conspiracy charge was merged; third-degree unlawful possession of a firearm without a permit, *N.J.S.A.* 2C:39–5b; and second-degree possession of a firearm for an unlawful purpose, *N.J.S.A.* 2C:39–4a.

For his conviction of possession of a firearm for an unlawful purpose, the court sentenced Hawks in December 1984 to an extended custodial term of fifteen years, subject to five years parole ineligibility. This sentence was based on the court's conclusion that defendant was a second offender under the Graves's Act extended-term provisions, contained in *N.J.S.A.* 2C:43–6c and quoted above. Hawks's sentences of lesser duration for the other crimes were to run concurrently with the sentence for the firearms conviction, which itself was to run consecutively to the sentence imposed for his prior Graves Act conviction.

Defendant argued on appeal that his sentence for the second conviction should have been vacated or reduced because of a disparity between it and the lesser sentence given his co-defendant, who fired the firearm in the aggravated assault. In affirming the trial court, however, the Appellate Division properly observed that if defendant was subject to a mandatory extended term under the Graves Act, to which his co-defendant

was not, he would not be entitled to sentence relief. 214 *N.J.Super.* at 432. As indicated, the majority below determined that the mandatory extended-term provisions were applicable to this defendant.

In sum, then, the defendant committed two Graves Act offenses on separate occasions, but he was convicted of the second offense before he was convicted of the first. The question to be resolved is whether a defendant whose first conviction was based on his second Graves Act offense may be considered "previously convicted" for purposes of imposing the Act's extended-term provisions on the occasion of his second Graves Act conviction.

## II

Defendant urges the Court to adopt the view that the statutory provisions referred to above do not require the imposition of a mandatory extended term unless a person has committed and been convicted of a Graves Act offense prior to commission of the Graves Act offense for which the extended term is to be imposed. Defendant's argument, not surprisingly, mirrors the position taken by the dissent below. The dissent insisted that the focus of the statute is deterrence, and because deterrence is triggered only by the warning provided by an initial conviction, the trial court ought to regard the extended-term provision as discretionary when commission of a subsequent offense has not been preceded by an initial conviction. 214 *N.J.Super.* at 436–37.

In reaching its conclusion, the dissent relied on *State v. Lightfoot, supra,* 208 *N.J.Super.* 475. The court in *Lightfoot* construed the extended-term provisions of the Graves Act by reference to the interpretation given *N.J.S.A.* 2C:14–6, the statute governing repeat sex offenders, in *State v. Anderson,* 186 *N.J.Super.* 174 (App.Div.1982), aff'd o.b., 93 *N.J.* 14 (1983). 208 *N.J.Super.* at 479. The *Lightfoot* court drew attention to what it regarded as the parallel construction of *N.J.S.A.*

2C:14-6 and *N.J.S.A.* 2C:44-3d, and concluded that the Graves Act, like the sex offender statute, required imposition of an extended sentence only when a second offense had been preceded by an initial conviction. *Ibid.*

In so doing, *Lightfoot* overruled two earlier decisions interpreting the statutes now under consideration insofar as those decisions failed to follow the reasoning of *Anderson.* *Ibid.* In *State v. Gillespie,* 203 *N.J.Super.* 417, 423 (Law Div.1984), the court ruled that *N.J.S.A.* 2C:43-6c required that the defendant receive an extended term of imprisonment even though the offense forming the basis of the second Graves Act conviction occurred before the first conviction; and in *State v. Windsor,* 205 *N.J.Super. supra* at 455, the court held that an extended term was mandated by the Graves Act even though the defendant's prior conviction was, as here, for an offense committed after the one for which the extended sentence was being imposed.

We digress in our recitation to observe that *Windsor* relied on our decision in *State v. Bey,* 96 *N.J.* 625 (1984). In *Bey* we rejected the notion that a defendant's prior conviction must have been entered before the commission of the subsequent offense in order for that conviction to be used as an aggravating factor in the penalty phase of a capital proceeding. *Id.* at 628. We emphasized that "the status of the prior conviction at the time of its intended use * * * is determinative. The relevance of such a conviction, duly authenticated by finality, inheres in the fact that the conviction has occurred prior to the jury's consideration of the appropriate penalty to be imposed." *Ibid* at 628. However, because of the distinctive purpose of our mandatory sentencing statutes, we hesitate, and indeed deem it unnecessary, to relate our ruling in *Bey* to the question posed by this case.

## III

As an initial matter we find *Anderson* inapposite to an inquiry concerning the Graves Act sentencing provisions. We therefore disapprove of so much of *Lightfoot* as relied on that case. In *Anderson* the defendant was simultaneously convicted of committing three different sex offenses. Consistent with decisions interpreting comparable penalty statutes, the court concluded that enhanced-penalty statutes such as *N.J.S.A.* 2C:14–6 applied only to chronologically-sequential convictions and not to simultaneous convictions. *Id.* at 177.

Although such an observation was unnecessary to its result, *Anderson* further concluded that the language of *N.J.S.A.* 2C:14–6—in which a "second or subsequent offense" is defined as occurring "if the actor has *at any time* been convicted" (emphasis added)—requires a second or subsequent offense to be preceded by a conviction. Without implying any view on the merits of that interpretation, we note that the language of *N.J.S.A.* 2C:14–6 varies distinctly from the definition of "prior conviction" contained in *N.J.S.A.* 2C:44–4(b) and relied on in the Graves Act scheme. The plain language of the Graves Act provisions does not limit, either expressly or impliedly, the chronological sequence of convictions subject to its extended term provisions; the only requirement is that there be a prior conviction.

Moreover, there is a fundamental difference in purpose between the Graves Act and repeat-offender statutes such as the one examined in *Anderson*. Whereas repeat-offender statutes focus on the person who commits the crime rather than on the crime itself, *Gillespie, supra,* 203 *N.J.Super.* at 420,

[t]he intent of the [Graves] Act, is manifest: at the very least, to ensure incarceration for those who arm themselves before going forth to commit

crimes * * *. The history of the legislation makes it clear that its focus is deterrence and only deterrence; rehabilitation plays no part in this legislation. [*State v. Des Marets, supra,* 92 *N.J.* at 68.]

*See also State v. Towey,* 114 *N.J.* 69, 83 (1989) (quoting *State v. Des Marets, supra,* 92 *N.J.* at 72); *State v. White,* 98 *N.J.* 122, 128 (1984) ("The Legislature in the Graves Act sought to deter possession and use of firearms."); *State v. Stewart,* 96 *N.J.* 596, 601 (1984) (noting that the Graves Act "seeks to deter crime, not rehabilitate criminals"). The spirit of the Graves Act is contrary to the principle that all circumstances of both the offender and the offense must be considered if justice is to be done, and that one of the most important aspects of criminal justice is the discretionary nature of punishment. *Des Marets, supra,* 92 *N.J.* at 71–72; *cf. State v. Roth,* 95 *N.J.* 334, 360 (1984) ("[A]n extended term is mandatory for second-time Graves Act offenders.") Thus, in relying on *Anderson,* the court in *Lightfoot* confused the rehabilitative function of repeat-offender statutes, see, *e.g., State v. Johnson,* 109 *N.J.Super.* 69 (App.Div.1970) (violation of Uniform Narcotic Drug Law), with the goals of purely deterrence-oriented statutes such as the Graves Act, see, *e.g., State v. Sturn,* 119 *N.J.Super.* 80, 82 (App.Div.) (enhanced punishment imposed for second violation of drunk-driving statute even though second offense occurred before first conviction), certif. den., 61 *N.J.* 157 (1972).

IV

Defendant and the dissent below would have us conclude that the goal of deterrence is better served by requiring that a prior conviction be entered before commission of the subsequent offense. An offender not yet convicted, it is argued, cannot be deterred. We think that proposition is unsound. The Graves Act was designed to deter all unlawful use of firearms, and the potency of its deterrent value lies precisely in the certainty of enhanced punishment. To allow a defendant to escape the

statutorily-required higher penalty because he or she has not yet been convicted, either because of strategic maneuvering by counsel or because of the vicissitudes of the court docket, would create for defendants a windfall not envisioned by the Legislature.

We recognize that because the length of an extended term depends on the length of the sentence for the offenses, the use of a second offense as a prior conviction may result in the imposition of a significantly longer extended term than would have been imposed had the chronology been reversed. Nevertheless, we believe that inasmuch as they also exist when convictions are entered sequentially, such disparities are neither inescapable nor invariably detrimental to defendants. Note, for example, that in the instant case because Hawks's second conviction was for a lesser offense than his first, he received a shorter extended term than he would have had the convictions followed their "proper" order—the order in which the offenses were committed. When the potential for results that may be grossly unfair are foreseen as the offenses make their way through the court system, defense counsel and the prosecution are at liberty to call that circumstance to the attention of the criminal assignment judge, to the end that where possible, the flow of the cases can be managed to avoid any manifest unfairness that might otherwise be produced as an accident of calendaring. When the time for the second sentencing proceeding arrives, it is too late to address the problem. To the extent that bizarre results cannot be avoided, that is a function of the legislation as we understand it.

We therefore hold that the extended term provisions of the Graves Act must be imposed on entry of a second firearms conviction, regardless of the order in which the offenses occurred. Accordingly, the judgment of the Appellate Division is

AFFIRMED.

STEIN, J., dissenting.

The majority opinion concludes that the mandatory extended term provisions of the Graves Act, *N.J.S.A.* 2C:43–6c and *N.J. S.A.* 2C:44–3d, apply to a defendant "whose first Graves Act offense is the subject of his second Graves Act conviction." *Ante* at 360. The dissenter in the Appellate Division would restrict the Graves Act extended-term sentences only to those defendants whose pending Graves Act offense *was preceded by a conviction* for a prior Graves Act offense. 214 *N.J.Super.* 430, 436–37 (1986) (Dreier, J., dissenting). I agree with the majority that the Graves Act extended-term provisions should apply to a defendant convicted of his or her *second* Graves Act offense, whether or not the conviction for the first Graves Act offense occurred before or after the commission of the second offense. *Ante* at 361. However, although the literal language of the Graves Act supports the majority's holding, I cannot agree that the Act's mandatory extended-term provisions apply to a defendant's *first* Graves Act offense that happens to be the subject of his second Graves Act conviction.

I am generally in accord with the majority opinion's analysis of the relevant decisional law, *ante* at 363–365, and concur in its conclusion that neither *State v. Bey,* 96 *N.J.* 625 (1984), nor *State v. Anderson,* 186 *N.J.Super.* 174 (1982), aff'd o.b., 93 *N.J.* 14 (1983), is dispositive. *Ante* at 366. I would focus instead on the effect of the majority's holding. Simply stated, it is that a defendant who commits two Graves Act offenses is to be sentenced to a mandatory *extended* term, and the length of *that* term will be affected substantially by the sequence in which the convictions for the offenses are entered.

It is self-evident that under the majority's holding the impact of the order of convictions on a defendant's sentence can be enormous. The length of the mandatory Graves Act extended term is fixed by *N.J.S.A.* 2C:43–7a, which prescribes a range of extended-term sentences that is equivalent to the sentencing range for offenses one degree higher than the offense for

which the extended term is to be imposed. The Graves Act also requires imposition of a mandatory minimum term in conjunction with the extended term, to be fixed between one-third and one-half the sentence imposed or five years, whichever is greater; if the extended-term sentence is life imprisonment, the mandatory minimum term is twenty-five years. *N.J.S.A.* 2C:43–7c.

The impact of the chronology of convictions can be illustrated by a hypothetical defendant who commits a first-degree Graves Act offense and subsequently commits a third-degree Graves Act offense. Assume that the offenses are tried in the order committed, that the second conviction is entered after the first conviction becomes final, *see N.J.S.A.* 2C:44–4b, and that maximum sentences are imposed for both crimes and are to run consecutively. The maximum term for the first-degree offense would be twenty years, *N.J.S.A.* 2C:43–6a(1), with ten years parole ineligibility. *N.J.S.A.* 2C:43–6c. The maximum extended term for the third-degree offense would be ten years, *N.J.S.A.* 2C:43–7a(4), with five years parole ineligibility. Defendant's sentence would thus expose him to thirty years imprisonment with a fifteen-year period of parole ineligibility.

However, if the vagaries of the trial calendar resulted in the order of convictions being reversed, the impact on defendant's sentence would be severe. The maximum non-extended term for a third-degree crime is five years, *N.J.S.A.* 2C:43–6a(3), subject to three years parole ineligibility, *N.J.S.A.* 2C:43–6c. The maximum extended term for a first-degree offense is life imprisonment, *N.J.S.A.* 2C:43–7a(2), with twenty-five years parole ineligibility. Again assuming the imposition of maximum and consecutive sentences, the reversal of the order of convictions would cause the hypothetical defendant to be sentenced to life plus five years imprisonment, and twenty-eight years parole ineligibility. The increase in that defendant's mandatory minimum sentence would be fifteen years, attributable solely to the order of conviction.

I acknowledge and agree with the majority's observation that "[t]he history of the [Graves Act] makes it clear that its focus is deterrence and only deterrence; rehabilitation plays no part in this legislation." *Ante* at 366 (quoting *State v. Des Marets,* 92 *N.J.* 62, 67–68 (1983)). Nevertheless, the Graves Act's legislative history is inconclusive on the issue before us. The Senate Law, Public Safety & Defense Committee Statement to S. 3057, *L.*1981, *c.* 31, after describing the mandatory sentences to be imposed on first-time offenders, observes that "[s]econd or subsequent offenses would subject the person to mandatory sentencing under the extended-term provisions of the Criminal Code * * *." I read that language to be supportive of the legislature's intent to impose a mandatory extended term in connection with a Graves Act offense committed subsequent to a defendant's first Graves Act offense.

Moreover, the sentencing mechanism approved by the majority is incompatible with the overriding concern of the Code of Criminal Justice to avoid sentencing disparity and to promote "a predictable degree of uniformity in sentencing." *State v. Hodge,* 95 *N.J.* 369, 379 (1984), certif. denied, 105 *N.J.* 518 (1986). Our Code adopted a sentencing philosophy that focuses primarily on the offense rather than the offender. *State v. Roth,* 95 *N.J.* 334, 355 (1984). As Justice O'Hern explained in *State v. Dunbar,* 108 *N.J.* 80 (1987), the Code's philosophy for extended-term sentencing is to focus on the offender "in the context of the offense committed," *id.* at 91, apparently by accepting the premise that the repeat offender is more blameworthy. *Id.* at 87.

It obviously distorts the offense-oriented sentencing approach of the Code to consider a first-time Graves Act offender to be more blameworthy, with reference to his *first* offense, because he subsequently commits another Graves Act offense. As illustrated above, the majority holding would foster sentencing disparity in respect of multiple Graves Act offenders, allowing the chronology of a Graves Act conviction to influence unduly the length of extended terms and period of parole ineligibility.

I perceive no affront to the legislative purpose in confining the mandatory extended-term provisions of the Graves Act to those Graves Act offenses committed after a defendant's first Graves Act offense.

HANDLER, J., joins in this opinion.

*For affirmance*—Chief Justices WILENTZ, and CLIFFORD, POLLOCK, O'HERN and GARIBALDI—5.

*For reversal*—Justices HANDLER and STEIN—2.