773 A.2d 1195 (2001)
340 N.J. Super. 133
STATE of New Jersey, Plaintiff-Respondent,
v.
Sylvester LIVINGSTON, Defendant-Appellant.
State of New Jersey, Plaintiff-Respondent-Cross-Appellant,
v.
Derrick Grimsley, Defendant-Appellant-Cross-Respondent.
Superior Court of New Jersey, Appellate Division.
Submitted April 3, 2001.
Decided May 1, 2001.
*1196 James K. Smith, Jr., Assistant Deputy Public Defender, argued the cause for appellant, Sylvester Livingston, in A-5583-98T4, (Peter A. Garcia, Acting Public Defender, attorney; Mr. Smith of counsel and on the brief).
Dorothy A. Hersh argued the cause for respondent in A-5583-98T4, (Daniel G. Giaquinto, Mercer County Prosecutor, attorney; Charles Ouslander, Assistant Prosecutor, of counsel and on the brief).
Peter A. Garcia, Acting Public Defender, attorney for appellant-cross-respondent, Derrick Grimsley, in A-5811-98T4, (Michael C. Kazer, Designated Counsel, on the brief).
Daniel G. Giaquinto, Mercer County Prosecutor, attorney for respondent-cross-appellant in A-5811-98T4, (Charles Ouslander, Assistant Prosecutor, of counsel and on the brief).
Before Judges PRESSLER, CIANCIA and ALLEY.
A-5583-98T Argued and A-5811-98T4
The opinion of the court was delivered by ALLEY, J.A.D.
These appeals arise from the trial of codefendants Sylvester Livingston and Derrick Grimsley in Mercer County. Livingston's appeal was argued and Grimsley's was submitted, and we consolidate them for purposes of this opinion.
Both defendants were indicted and were tried by a jury on the following charges: carjacking, first degree, N.J.S.A. 2C:15-2 (Count One); robbery, first degree, N.J.S.A. 2C:15-1 (Count Two); theft, third degree, N.J.S.A. 2C:12-3(a) (Count Three); unlawful taking of a motor vehicle, fourth degree, N.J.S.A. 2C:20-10(b) (Count Four); attempted murder, first degree, N.J.S.A. 2C:11-3 and 2C:5-1 (Count Five); aggravated assault, second degree, N.J.S.A. 2C:12-1(b)(1) (Count Six); aggravated assault, fourth degree, N.J.S.A. 2C:12-1(b)(4) (Count Seven); possession of *1197 a weapon for an unlawful purpose, second degree, N.J.S.A. 2C:39-4(a) (Count Eight); and unlawful possession of a weapon, third degree, N.J.S.A. 2C:39-5(b) (Count Nine).
Each defendant was found guilty on all Counts and, after appropriate mergers, each was sentenced on Counts One, Five and Nine. The court imposed the following respective sentences on these convictions:

Livingston: life, with a period of twenty-five years without parole for carjacking (Count One); twenty years, with a period of ten years without parole for attempted murder (Count Five), concurrent to the sentence on Count One; and five years with a period of two and onehalf years without parole for unlawful possession of a weapon (Count Nine), consecutive to the other sentences;
Grimsley: life, with a period of twenty-five years without parole for carjacking (Count One); life, with a period of twenty-five years without parole for attempted murder (Count Five), concurrent to the sentence on Count One; and ten years with a period of five years without parole for unlawful possession of a weapon (Count Nine), consecutive to the other sentences.
Also indicted with these defendants on the same charges, but tried separately from them, was Marcus Payton, who testified at their joint trial. At Payton's trial he was found guilty on all charges except attempted murder. After appropriate mergers, Payton received an aggregate sentence of ten years imprisonment, with a period of five years without parole.
Evidence presented by the State could have led the jury to find that the victim, Rodney Jenkins, had parked his girlfriend's vehicle at a closed service station in Trenton early in the morning of August 8, 1995, and was making a telephone call from a pay phone at the station. Meanwhile, Payton was driving around the area with Livingston and Grimsley when they observed Jenkins talking on the phone. After circling the area, Payton stopped his vehicle and got out, purportedly to relieve himself, and as he was thus engaged the other two walked over to Jenkins. Jenkins was twice shot in the back and was seriously wounded by more than one round. Livingston and Grimsley left Jenkins on the ground and fled in the vehicle Jenkins had been driving. Jenkins, who was near death when taken to the hospital and underwent lengthy hospitalization and rehabilitation, has lost the use of both legs and his left arm and shoulder. He had been a security officer at Trenton Psychiatric Hospital at the time of the crimes and had been captain of the security officers' basketball team. Due to his condition, he was unable to assist materially with identification procedures for a considerable period after the crime, but after his hospitalization he was able to identify a photograph of Livingston in a photo array. He was unable to identify Grimsley.

I
In Livingston's appeal of his conviction and sentence, he contends:
I. THE DEFENDANT'S RIGHT TO DUE PROCESS OF LAW WAS VIOLATED WHEN THE TRIAL COURT ADMITTED BOTH IN-COURT AND OUT-OF-COURT IDENTIFICATIONS MADE BY THE VICTIM, WHO HAD TOLD BOTH THE POLICE AND THE F.B.I. THAT HE DID NOT SEE THE MEN RESPONSIBLE FOR THIS OFFENSE.
II. THE DEFENDANT'S DUE PROCESS RIGHT TO PRESENT A DEFENSE WAS VIOLATED WHEN THE TRIAL *1198 COURT REFUSED TO ADMIT A PHOTOGRAPH OF HIM THAT WAS PUBLISHED IN THE NEWSPAPER PRIOR TO THE VICTIM'S PHOTO IDENTIFICATION.
III. THE DEFENDANT WAS DENIED A FAIR TRIAL BY THE COURT'S REFUSAL TO GIVE A CHARGE ON IDENTIFICATION WHICH EXPLAINED THE LAW IN THE CONTEXT OF THE MATERIAL FACTS OF THE CASE.
IV. THE DEFENDANT'S RIGHT TO DUE PROCESS OF LAW WAS VIOLATED WHEN THE TRIAL JUDGE REFUSED TO ALLOW HIM TO CROSS-EXAMINE MARCUS PAYTON ABOUT THE AMOUNT OF TIME THAT HE WAS FACING FOR HIS CONVICTIONS IN THIS CASE.
V. THE DEFENDANT MUST BE RESENTENCED BECAUSE HIS SENTENCE WAS BASED UPON THE TRIAL COURT'S MISTAKEN BELIEF THAT CARJACKING IS A GRAVES ACT OFFENSE, AND BECAUSE THE TRIAL COURT GAVE NO REASONS FOR IMPOSING A CONSECUTIVE SENTENCE FOR POSSESSION OF THE WEAPON. (Not Raised Below).
We have considered the issues that Livingston has raised in light of the record, the applicable law, and the arguments of counsel, and we are satisfied that each issue he has raised is without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(2).
We add only these brief observations. We are persuaded that the trial judge correctly rejected Livingston's offer into evidence of a newspaper photograph of Livingston published before the victim identified him. The purported object of the offer was to provide a basis for contending that the victim's identification of Livingston from a photo array had been tainted by the victim having already seen Livingston's photograph in a newspaper. The victim, Rodney Jenkins, testified both at trial and at the Wade hearing, United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967). With respect to the period prior to the identification procedure, on both occasions Jenkins testified that he had not seen any such photograph. At the Wade hearing a friend of the victim testified that he had not brought any newspapers to Jenkins, and that Jenkins had not requested any newspapers. On the record before the trial court, there was no evidence to show that Jenkins saw or was reasonably likely to have seen the newspaper photograph. Of course, Jenkins' denial was not necessarily conclusive, but there was no basis laid in the record for admitting the photograph. This is not a matter of authentication but of remoteness and speculation. No hospital personnel testified, for example, regarding the distribution of newspapers or access to newspapers, either with respect to patients in general or Jenkins in particular. The request to admit Livingston's newspaper photograph was based, rather, on no more than piling inferences and conjectures on one another, and the trial court properly exercised its discretion in rejecting its admissibility. See State v. Catlow, 206 N.J.Super. 186, 193, 502 A.2d 48 (App.Div. 1985), certif. denied, 103 N.J. 465, 466, 511 A.2d 648 (1986).

II
In Grimsley's appeal of his conviction and sentence, he contends:

*1199 I. THE COURT'S RESTRICTIONS ON DEFENDANT'S ABILITY TO CROSS-EXAMINE MARCUS PAYTON DEPRIVED DEFENDANT OF A FAIR TRIAL.
II. THE COURT ABUSED ITS DISCRETION BY PRECLUDING DEFENSE COUNSEL FROM ESTABLISHING REASONABLE DOUBT.
III. THE PROSECUTOR'S STATEMENT MADE IN SUMMATION THAT "REASONABLE DOUBT" MEANS "WHAT IS MY GUT TELLING ME IS REASONABLE" CONSTITUTES REVERSIBLE ERROR BECAUSE IT CAUSED THE JURY TO DECIDE THE DEFENDANT'S GUILT BASED ON AN INACCURATE AND INCORRECT LEGAL STANDARD.
IV. THE IMPOSITION OF A LIFE SENTENCE PLUS TEN (10) YEARS WITH A PAROLE INELIGIBILITY PERIOD OF THIRTY (30) YEARS WAS EXCESSIVE AND AN ABUSE OF THE COURT'S DISCRETION.
A. Imposition of the maximum extended term sentences was excessive and an abuse of the court's discretion.
B. The court abused its discretion by running the sentence imposed on count nine consecutive to counts one and five.
C. The court abused its discretion by imposing the extended term sentence on count nine because of the disparity of sentence imposed on co-defendant Livingston.
Except for an error in the sentence imposed on one conviction, as to Grimsley's appeal we are satisfied from our review of the record in the light of the applicable law and the arguments of counsel that the issues raised are of insufficient merit to warrant disposition in a written opinion. R. 2:11-3(e)(2). There was, however, an error in the sentence. The sentencing court incorrectly imposed on Grimsley for carjacking (Count One) an extended term Graves Act sentence of life, with a period of twenty-five years without parole. As the State concedes, carjacking, N.J.S.A. 2C:15-2, is not enumerated as an offense for which Graves Act extended term sentencing can be imposed. N.J.S.A. 2C:43-6c. Because the Graves Act extended term sentencing provisions enumerate the crimes that trigger such sentences, and because carjacking is not so enumerated, we agree that Grimsley's sentence for carjacking should have been imposed without a Graves Act extended term and we vacate that portion of the sentence and remand for resentencing on Count One. We do not preclude imposition of an appropriate extended term sentence on any conviction qualifying therefor.

III
Finally, the State has cross-appealed, asserting that the trial court erred in determining that Grimsley was not eligible to be sentenced with no possibility of parole under the "Three Strikes" law, N.J.S.A. 2C:43-7.1(a).
Grimsley was sentenced by Hon. Alfred M. Wolin, then a Judge of the Superior Court, on or about December 3, 1985, on separate Essex and Union County indictments for robbery. Presumably both matters were consolidated for handling in Union County pursuant to R. 3:25A-1. The robberies occurred on December 1, 1983, and May 10, 1984, and Grimsley pled guilty to both on October 24, 1985. After imposing a sentence in both cases, Judge Wolin signed separate judgments of conviction *1200 for each of these two convictions, both dated December 3, 1985.
We conclude that these robbery convictions do not constitute convictions "on two or more prior and separate occasions" under the so-called "Three Strikes" law, N.J.S.A. 2C:43-7.1(a), which provides:
A person convicted of a crime under any of the following: N.J.S. 2C:11-3; subsection a. of N.J.S. 2C:11-4; a crime of the first degree under N.J.S. 2C:13-1, paragraphs (3) through (6) of subsection a. of N.J.S. 2C:14-2; N.J.S. 2C:15-1; or section 1 of P.L.1993, c. 221 (C.2C:15-2), who has on two or more prior and separate occasions been convicted of a crime under any of the foregoing sections or under any similar statute of the United States, this state, or any other state for a crime that is substantially equivalent to a crime under any of the foregoing sections, shall be sentenced to a term of life imprisonment by the court, with no eligibility for parole.
We follow firmly-established principles of statutory interpretation that were reiterated recently by Justice Coleman in State v. Thomas, 166 N.J. 560, 567, 767 A.2d 459 (2001):
"As a general rule of statutory construction, we look first to the language of the statute. If the statute is clear and unambiguous on its face and admits of only one interpretation, we need delve no deeper than the act's literal terms to divine the Legislature's intent." State v. Butler, 89 N.J. 220, 226, 445 A.2d 399 (1982). However, if the statute is not clear and unambiguous on its face, "we consider sources other than the literal words of the statute to guide our interpretive task.... `[T]he court considers extrinsic factors, such as the statute's purpose, legislative history, and statutory context to ascertain the legislature's intent.'" Aponte-Correa v. Allstate Ins. Co., 162 N.J. 318, 323, 744 A.2d 175(2000) (quoting Township of Pennsauken v. Schad, 160 N.J. 156, 170, 733 A.2d 1159 (1999)); State v. McQuaid, 147 N.J. 464, 480-82, 688 A.2d 584 (1997). The policy behind the statute also should be considered. County of Monmouth v. Wissell, 68 N.J. 35, 43-44, 342 A.2d 199 (1975).
Although the language of the "Three Strikes" statute, "on two or more prior and separate occasions," is clear and unambiguous, and the statute cannot reasonably be interpreted to subject Grimsley to its terms,[1] we note briefly the background of this enactment as summarized by Justice O'Hern at the outset of his opinion in State v. Oliver, 162 N.J. 580, 583-84, 745 A.2d 1165 (2000), in which our Supreme Court upheld the statute's constitutionality:
In 1993, Richard Allen Davis, a six-time offender, on parole for his most recent offense, a sexual assault, broke into the Petaluma, California home of Polly Klaas, a twelve-year-old child. She and her friends had had a slumber party. Davis kidnaped, raped and killed Polly. A year and a half earlier, eighteen-year-old *1201 Kimber Reynolds had been murdered by a repeat offender in Fresno, California. Polly's murder was the turning point in the efforts of Kimber's father, Mike, to prevent the premature release from prison of dangerous criminals. Both victims' fathers became heavily involved in the legislative reaction to such shocking murders by paroled offenders. The efforts focused on various proposals. One proposal was for a "Three Strikes" law. A "Three Strikes" law is a shorthand expression for a law providing mandatory life imprisonment for certain third-time criminal offenders. When President Clinton signed the Violent Crime Control and Law Enforcement Act of 1994 containing the federal version of three-strikes legislation, that act encouraged many states to follow suit. See Violent-Crime Control and Law Enforcement Act of 1994, Pub.L. No. 103-322, 108 Stat. 1796 (1994); Michael G. Turner, et al., Three Strikes and You're Out Legislation: A National Assessment, Fed. Probation, Sept. 1995, at 16. In 1995, the New Jersey Legislature passed a three-strikes bill entitled the Persistent Offender Accountability Act. N.J.S.A. 2C:43-7.1a. That law mandates a life sentence without parole for any person convicted on three separate occasions of certain violent crimes, such as murder, manslaughter, aggravated assault, kidnaping, sexual assault, robbery, or illegal possession of a firearm or explosive.

[Footnote omitted.]
We turn to the language "two or more prior and separate occasions...."[2] Strained and tortured construction might urge that "two or more prior and separate occasions on which a defendant has been convicted" means only that the two earlier convictions must have occurred before the third, and that those two need not have occurred at different times. This makes no sense, even apart from the statute's express use of the word "separate." The word "two" is specifically used in the conjunctive and modifies "occasions." The triggering event is "three strikes," not two. Justice O'Hern's reference in State v. Oliver, supra, to the statutory backdrop puts the concept this way: "That law mandates a life sentence without parole for any person *1202 convicted on three separate occasions of certain violent crimes...." 162 N.J. at 583, 745 A.2d 1165. (Emphasis added).
The term "separate occasions" is almost uniformly used in the sense of at "different times." See, e.g., State v. G.V., 162 N.J. 252, 259, 744 A.2d 137 (2000); Garfinkel v. Morristown Obstetrics & Gynecology Associates, P.A., 333 N.J.Super. 291, 298, 755 A.2d 626 (App.Div.2000); State v. Sosinski, 331 N.J.Super. 11, 14, 750 A.2d 779 (App. Div.) certif. denied, 165 N.J. 603, 762 A.2d 217 (2000); State v. Cook, 330 N.J.Super. 395, 750 A.2d 91 (App.Div.) certif. denied, 165 N.J. 486, 758 A.2d 646 (2000); Reynolds v. Lancaster County Prison, 325 N.J.Super. 298, 305, 739 A.2d 413 (App. Div.1999) certif. denied, 163 N.J. 394, 749 A.2d 368 (2000).
What are separate times for purposes of the statute? The focus of this provision clearly is not on the separateness of the underlying prior crimes but on the convictions. Grimsley pled guilty to two separate robberies on the same day. He later was sentenced for both on another day. The likelihood is, and the record does not show the contrary, that the cases were consolidated under R. 3:25A-1 or were treated as de facto consolidated, that the pleas were entered within minutes of each other sequentially in a continuous proceeding, and that on the sentencing date the sentences were imposed sequentially in a continuous proceeding. While Grimsley's prior robbery convictions thus did not occur simultaneously or concurrently, nevertheless they plainly were not "separate." They occurred in a single continuous proceeding. In the face of the clarity of the statute's wording, it is not appropriate for us to venture to define any arbitrary specific amount of time that must pass between the "separate occasion[s]" for the imposition of the convictions.
It is instructive, in applying the "Three Strikes" law that is now before us, to consider prior practice under a somewhat comparable provision of former Title 2A, the "habitual offender" act, N.J.S.A. 2A:85-12, repealed September 1, 1979, upon the adoption of Title 2C, the Code of Criminal Justice.[3] From the time of the decision in State v. McCall, 14 N.J. 538, 103 A.2d 376 (1954), the habitual offender law was consistently applied to count multiple convictions obtained on the same date as only one of the predicate three prior convictions that were required to trigger the act's sentencing provisions. See State v. Williams, 167 N.J.Super. 57, 63, 400 A.2d 513 (App.Div.1979): State v. Culver, 30 N.J.Super. 561, 105 A.2d 429 (App. Div.1954), aff'd, 16 N.J. 483, 109 A.2d 422 (1954), see also State v. Culver, 40 N.J.Super. 427, 431-432, 123 A.2d 383 (App.Div. 1956), affirmed 23 N.J. 495, 129 A.2d 715 (1957), cert. denied, 354 U.S. 925, 77 S.Ct. 1387, 1 L.Ed.2d 1441 (1957).[4]
*1203 Thus, our reading of the "Three Strikes" law is fully consistent with the manner in which the former "habitual offender" act was applied. In the "Three Strikes" statute, unlike the habitual offender act, there is not a separate provision that prohibits counting as predicate crimes multiple convictions entered on the same day. The present statute's clear wording, however, renders the lack of an express particular statutory provision to that effect insignificant.
The manner in which our Supreme Court applied the escalating fines and license suspension sanctions for auto theft under N.J.S.A. 2C:20-2.1 in State v. Eisenman, 153 N.J. 462, 710 A.2d 441 (1998), is interesting in this context. The defendant there had stolen several vehicles and was charged with these thefts in three indictments. He pled guilty to most of these charges on one day and was sentenced pursuant to his guilty pleas on another day. The Court held:
Because defendant's thefts, first of the Chrysler van, then of the Isuzu Trooper, and finally of the Mercedes and the Jeep, clearly were independent crimes committed at different times in separate places and affecting separate victims the imposition of three consecutive tenyear suspensions could constitute a proper exercise of the sentencing court's discretion.

[153 N.J. at 478-79, 710 A.2d 441.]
Eisenman, however, does not contradict the result we reach here because of the clarity of the expression "separate occasions" in the "Three Strikes" statute and the immense difference between a life term of imprisonment and the non-custodial sanctions under N.J.S.A. 2C:20-2.1. Moreover, the language of the "Three Strikes," provision is not comparable to the theft statute's references to "first offense," "second offense," and "third or subsequent offense...."
We are of course mindful that we should view the "Three Strikes" provisions, as we do other sentencing enactments, through the lens of the "paramount goal of our sentencing reform [,which] has been to seek greater uniformity in sentencing. State v. Hartye, 105 N.J. 411, 415-16, 522 A.2d 418 (1987)." State v. Dunbar, 108 N.J. 80, 97, 527 A.2d 1346 (1987). It is indeed appropriate to inquire as to the fairness of sentencing one individual to life imprisonment under the "Three Strikes" law, compared with the possibility of allowing another with the same number of convictions for offenses on different dates with different victims to escape the sentence merely because his convictions for separate crimes have fallen on the same day. This consideration becomes of even greater moment when, as with Grimsley, the conduct of the possible beneficiary of the fortuity shows no indication that "the life sentence may frustrate rehabilitation while there is still hope...." State v. McCall, supra, 14 N.J. at 548, 103 A.2d 376. We are persuaded, however, that these considerations do not trump the plain language of the statute. Moreover, in the case of this thirty-five year old defendant, who is already subject in this case to a life sentence for attempted murder, with a total of thirty years of parole ineligibility on that sentence and the weapons *1204 offense, the practical benefit that results to him from this decision is that he would be eligible for parole after age sixty rather than not eligible at all.[5]
To summarize, in light of the statute's plain language, we are satisfied that applying the "Three Strikes" law to defendants in Grimsley's position would pervert rather than fulfill the statute. It is not enough that the pleas in the two prior cases and the sentences in the two cases occurred sequentially rather than simultaneously. We are in no doubt that Grimsley's two robbery convictions were imposed in actual or de facto consolidated cases, without separation, and not on "two or more prior and separate occasions." The trial court thus correctly rejected the State's application that Grimsley be sentenced pursuant to the "Three Strikes" law.

IV
With respect to the appeal by defendant Sylvester Livingston, in all respects the judgment of conviction and sentence are affirmed.
With respect to the appeal by defendant Derrick Grimsley, we affirm the conviction and sentence in all respects, except that we vacate the extended term Graves Act sentence imposed for carjacking on Count One and remand to the trial court for resentencing on that conviction.
The cross-appeal by the State is denied.
NOTES
[1] To be sure, in evaluating this statute we must follow the "canon of statutory interpretation that mandates strict construction of a criminal statute. See generally State v. Galloway, 133 N.J. 631, 628 A.2d 735 (1993); State v. Valentin, 105 N.J. 14, 17, 519 A.2d 322, (1987); State v. Carbone, 38 N.J. 19, 23-24, 183 A.2d 1 (1962)." State v. Austin, 335 N.J.Super. 486, 489, 762 A.2d 1052 (App.Div.2000). In the statutory drafting process, the particular situation of defendants such as Grimsley, who "package" pleas the same day and later are sentenced on another day, undoubtedly could have been more particularly addressed. It is clear to us, nevertheless, that the statute plainly does not apply to defendants in Grimsley's position.
[2] On the present facts, the meaning of "prior" as used in the statute involves no difficult issue of interpretation, and this is in contrast to use of the concept "prior" and "previously convicted" as employed respectively in N.J.S.A. 2C:43-6(c) and N.J.S.A. 2C:44-4(b) in a different context, see State v. Hawks, 114 N.J. 359, 554 A.2d 1330 (1989) and State v. Haliski, 140 N.J. 1, 656 A.2d 1246 (1995). As Judge King observed in State v. Hill, 327 N.J.Super. 33, 39-40, 742 A.2d 605 (App.Div. 1999), certif. denied, 164 N.J. 188, 752 A.2d 1290 (2000), in Hawks, supra,

the Supreme Court considered a defendant who had committed two Graves Act (gun) offenses on separate occasions. He had been convicted for the second offense before he was convicted for the first offense. In resolving the "previously convicted" issue, the Court held that the extended-term provisions of the Graves Act must be imposed on the entry of the second gun conviction, no matter in what order the offenses occurred. Id. at 363, 367[, 554 A.2d 1330]. Later, in State v. Haliski, 140 N.J. 1, 656 A.2d 1246, (1995), the Court, relying on Hawks, emphasized that the Graves Act "is concerned only with deterrence and is wholly unconcerned with rehabilitation." Haliski, 140 N.J. at 9, 656 A.2d 1246. The Court also held that a second Graves Act offender may be sentenced to a mandatory extended term while his first Graves Act conviction is either pending on appeal or the time to appeal has not yet expired. Id. at 17-18[, 656 A.2d 1246].
Here, the sentences for each of the earlier robberies have long since been imposed and there is no issue of pending appeals or sequence of convictions that casts any doubt on whether Grimsley's 1985 robbery convictions were "prior." There can be no legitimate dispute that they are "prior" convictions for purposes of the application of this statute.
[3] Any person convicted on 3 separate occasions of high misdemeanors in this state, or of crimes under the laws of the United States or any other state or country, which crimes would be high misdemeanors under the laws of this state, or whose convictions for such offenses in this state or under the laws of the United States or any other state or country shall total 3 or more, and who thereafter is convicted of an offense enumerated in this subtitle, is hereby declared to be an habitual criminal, and the court in which such fourth or subsequent conviction is had, shall impose a life sentence in the state prison upon the person so convicted. Conviction of 2 or more of such crimes or high misdemeanors charged in 1 indictment or accusation, or in 2 or more indictments or accusations consolidated for trial shall be deemed to be only 1 conviction.
[4] Our Supreme Court, in applying this provision in State v. McCall, supra, 14 N.J. at 548, 103 A.2d 376, noted that the second paragraph of the statute quoted above had been added by a 1951 amendment and that this... paragraph of the Habitual Criminals Act as reenacted in N.J.S. 2A:8512, N.J.S.A., in 1951 is clear. It is an embodiment of the amelioration philosophy subsequently expressed in the Report to Governor Alfred E. Driscoll of the Committee to Examine and Investigate the Prison and Parole Systems of New Jersey (appointed by Governor Driscoll under L.1941, c. 315, N.J.S.A. 52:157), dated November 21, 1952, at page 86 namely:

Where in the particular circumstances life imprisonment is deemed harsh and unreasonable, the prosecution becomes abortive. And the life sentence may frustrate rehabilitation while there is still hope....
[5] In any event, the Supreme Court's comment as to the defendant in State v. Thomas, supra, 166 N.J. at 574, 767 A.2d 459 is pertinent here:

The Court's holding today should not be viewed as an indication that we do not deem the offense, involving as it does an eleven-year-old child, to be serious. Our decision is based exclusively on the view that the Legislature has made the decision, whether wisely or otherwise, that not all sexual offenses against children should be subject to NERA. We find defendant's conduct to be both serious and reprehensible.
Although Grimsley's crimes are different than the one in Thomas, they also represent reprehensible conduct and we do not minimize their seriousness.