793 A.2d 96

STATE OF NEW JERSEY, PLAINTIFF–APPELLANT–CROSS–RESPONDENT, v. DANIEL P. GALIANO, DEFENDANT–RESPONDENT–CROSS–APPELLANT.

Superior Court of New Jersey
Appellate Division

Submitted February 26, 2002—Decided March 14, 2002.

 

Before Judges WEFING, CIANCIA and COLEMAN.

*John Kaye,* Monmouth County Prosecutor, attorney for plaintiff-appellant-cross-respondent (*Michael J. Wojciechowski,* Assistant Prosecutor, of counsel and on the brief).

*Peter A. Garcia,* Acting Public Defender, attorney for defendant-respondent-cross-appellant (*Alyssa Aiello,* Assistant Deputy Public Defender, of counsel and on the brief).

The opinion of the court was delivered by

CIANCIA, J.A.D.

Following a jury trial, defendant Daniel P. Galiano was found guilty of first-degree armed robbery, *N.J.S.A.* 2C:15–1; and second-degree possession of a firearm for an unlawful purpose, *N.J.S.A.* 2C:39–4a. The trial court denied the State's motion requesting that defendant be sentenced to life in prison without parole, pursuant to *N.J.S.A.* 2C:43–7.1a, the so-called "Three Strikes" statute. Instead, the trial court sentenced defendant to life in prison with a twenty-five-year period of parole ineligibility, pursuant to *N.J.S.A.* 2C:44–3d, which requires an extended-term sentence for persons convicted of a violation of *N.J.S.A.* 2C:39–4a when that person has previously been convicted of certain enumerated offenses, including armed robbery. Defendant's conviction for unlawfully possessing a firearm was merged into the conviction for armed robbery. Appropriate fees and penalties were also imposed.

The State appealed the trial court's ruling that the Three Strikes Statute was inapplicable in defendant's circumstances. Subsequently, defendant filed a notice of cross-appeal contending:

POINT ONE THE OUT-OF-COURT AND IN-COURT IDENTIFICATIONS OF GALIANO MADE BY EHRICH, BLUMENFELD AND KELPINSKI WERE THE PRODUCT OF IMPERMISSIBLY SUGGESTIVE POLICE PROCEDURES, AND THEREFORE, THEIR ADMISSION INTO EVIDENCE VIOLATED GALIANO'S RIGHT TO A FAIR TRIAL AND DUE PROCESS OF LAW.

POINT TWO GALIANO'S CONVICTIONS MUST BE REVERSED BECAUSE THE TRIAL COURT FAILED TO INSTRUCT THE JURY ON HOW TO ANALYZE AND CONSIDER THE TRUSTWORTHINESS OF THE PHOTO IDENTIFICATIONS MADE BY EHRICH, BLUMENFELD AND KELPINSKI, THEREBY VIOLATING GALIANO'S RIGHT TO DUE PROCESS AND A FAIR TRIAL. (Not Raised Below)

POINT THREE IN HIS OPENING STATEMENT, CLOSING ARGUMENT, AND DIRECT EXAMINATION OF DETECTIVE AUGUSTIN, THE PROSE-

CUTOR IMPROPERLY SUGGESTED THAT DEFENDANT'S PHOTO-GRAPH WAS PLACED IN THE PHOTO ARRAY BECAUSE THE POLICE HAD RECEIVED INFORMATION FROM A NON-TESTIFYING PARTY WHICH IMPLICATED GALIANO AS THE PERSON WHO COMMITTED THE ROBBERY. (Not Raised Below)

POINT FOUR GALIANO'S CONVICTION FOR POSSESSION OF A WEAP-ON FOR UNLAWFUL PURPOSES MUST BE REVERSED, AND THE ENHANCED SENTENCE THAT HE RECEIVED PURSUANT TO THE SECOND OFFENDER WITH A FIREARM STATUTE MUST BE VACAT-ED, BECAUSE THE TRIAL COURT GAVE THE JURY A MISLEADING INSTRUCTION WHICH IMPROPERLY SUGGESTED THAT THE STATE DOES NOT NEED TO PROVE THAT AN OBJECT WHICH LOOKS LIKE A HANDGUN IS, IN FACT, A HANDGUN IN ORDER TO ESTABLISH THE CRIME OF POSSESSION OF A WEAPON FOR UNLAWFUL PURPOSES. (Not Raised Below)

POINT FIVE THE TRIAL JUDGE ABUSED HIS DISCRETION IN SEN-TENCING GALIANO TO AN EXTENDED TERM OF LIFE IN PRISON WITH A 25-YEAR PAROLE DISQUALIFIER.

We find no merit in defendant's first three issues and the two remaining issues are essentially mooted by our determination that the State's appeal is meritorious and defendant was subject to a mandatory life sentence without parole.

The gravamen of the charges against defendant was an armed robbery of a nail salon on January 29, 1997. The perpetra-tor was a white male who wore a sweatshirt with its hood pulled over his head, but who otherwise made no effort to conceal his face. The robber held a black and gray gun as he demanded jewelry and money from patrons and employees. The perpetra-tor, at one point, threatened to kill someone if more jewelry was not forthcoming. He eventually left the store without firing the gun or otherwise physically injuring any of the victims.

At least three of the victims said they had gotten a good look at the perpetrator, and each of those three women worked with the police to produce a drawing of the robber's face. Those three drawings could be found to be similar in their depictions and, in turn, the drawings certainly could be said to resemble defendant.

The police obtained a photograph of defendant and placed it in a display along with five other pictures. The photographic display was shown separately to each of the three women who said they

had gotten a good look at the perpetrator, and each selected defendant's photograph without hesitation. A fourth woman who had been in the beauty parlor and who had previously said she did not believe she could accurately describe the robber's face, was also shown the photo array and was not able to select anyone as the perpetrator.

The photo array and resulting identifications were challenged by defendant at a pretrial *Wade*[1] hearing. The trial court found the out-of-court identification procedure was not impermissibly suggestive. We agree with that conclusion.

The photo array was provided to us as part of the appellate record. It consists of six color photographs, each depicting the face and neck of a white male with dark hair. Each man appears about the same age and none has facial hair, although one may have a light mustache. Their features are very similar. None of the pictures contain any identifying markings that might suggest the source of the photograph. Defendant's picture is a darker shade than the others and he is shown with a dark collar that defendant contends depicts a hood. In our view it is debatable, at best, whether the collar shown in defendant's picture is, in fact, part of a hood.

We are satisfied, as was the trial court, that the array was not unduly suggestive and, more to the point, if there was any suggestiveness it was not capable of tainting the witnesses' in-court identifications. *See e.g., State v. Clausell,* 121 *N.J.* 298, 325–326, 580 *A.*2d 221 (1990). Here, the victims had ample opportunity to observe the facial features of the perpetrator, and each availed herself of that opportunity. Each of the three women helped to produce a composite sketch of the perpetrator and each sketch depicted a person similar to defendant. There has been no demonstration by defendant that the identification procedure was so suggestive as to result in a substantial likelihood of misidentification. *State v. Hurd,* 86 *N.J.* 525, 548, 432 *A.*2d 86 (1981); *State*

---

[1] *United States v. Wade,* 388 *U.S.* 218, 87 *S.Ct.* 1926, 18 *L.Ed.*2d 1149 (1967).

*v. Cook,* 330 *N.J.Super.* 395, 417, 750 *A.*2d 91 (App.Div.), *certif. denied,* 165 *N.J.* 486, 758 *A.*2d 646 (2000). We are satisfied that under the totality of the circumstances the identifications of defendant were based upon the witnesses' observations during the robbery and not on an impermissibly-suggestive photographic array. *State v. Madison,* 109 *N.J.* 223, 232, 536 *A.*2d 254 (1988).

▮ Additionally, we find no plain error in the trial court's jury instructions concerning the identifications of the defendant. The instructions were virtually identical to those approved by our Supreme Court in *State v. Robinson,* 165 *N.J.* 32, 37–39, 754 *A.*2d 1153 (2000). In this context, "summarizing the strengths and weaknesses of the evidence is more appropriately left for counsel." *Id.* at 45, 754 *A.*2d 1153, citing *State v. Walker,* 322 *N.J.Super.* 535, 551, 731 *A.*2d 545 (App.Div.), *certif. denied,* 162 *N.J.* 487, 744 *A.*2d 1209 (1999).

We also find no violation of *State v. Bankston,* 63 *N.J.* 263, 307 *A.*2d 65 (1973), much less plain error, in the comments of the prosecutor or in the testimony of Detective Augustin, all of which were unobjected to at trial but now assertedly constitute reversible error. Defendant takes selected statements out of context and asserts that they inferentially violate the hearsay prohibition against evidence being provided by a non-testifying witness. We find defendant's interpretation of the record to be without merit.

Before dealing with defendant's two remaining issues, we address the State's contention that defendant should have been sentenced under the Three Strikes Law to life imprisonment without parole. The argument centers around the chronology of defendant's crimes and convictions.

*N.J.S.A.* 2C:43–7.1a provides:

*Life Imprisonment Without Parole* A person convicted of a crime under any of the following: N.J.S. 2C:11–3; subsection a. of N.J.S. 2C:11–4; a crime of the first degree under N.J.S. 2C:13–1, paragraphs (3) through (6) of subsection a. of N.J.S. 2C:14–2; N.J.S. 2C:15–1; or section 1 of P.L.1993, c. 221 (c. 2C:15–2), who has on two or more prior and separate occasions been convicted of a crime under any of the foregoing sections or under any similar statute of the United States, this state, or any other state for a crime that is substantially equivalent to a crime under any

of the foregoing sections, shall be sentenced to a term of life imprisonment by the court, with no eligibility for parole.

Subsection c. states:

The provisions of this section shall not apply unless the prior convictions are for crimes committed on separate occasions and unless the crime for which the defendant is being sentenced was committed either within 10 years of the date of the defendant's last release from confinement for commission of any crime or within 10 years of the date of the commission of the most recent of the crimes for which the defendant has a prior conviction.

Defendant's relevant criminal history is as follows:

In July 1990 defendant was sentenced in New York State for first-degree robbery (N.Y. *Penal Law* § 160.15). That crime is apparently "substantially equivalent" to a violation of *N.J.S.A.* 2C:15-1. *State v. Rhodes*, 329 *N.J.Super.* 536, 543, 748 *A.*2d 625 (App.Div.), *certif. denied*, 165 *N.J.* 487, 758 *A.*2d 647 (2000). Defendant does not now argue to the contrary.

The present offense was committed on January 29, 1997. He was sentenced on February 4, 2000.

On July 3, 1997, defendant was sentenced in New York State for three first-degree robberies, committed in February, March and June 1997.

On May 26, 1998, defendant was sentenced in New Jersey for two first-degree armed robberies, one committed on January 16, 1997 and the other on January 17, 1997.

Thus, defendant had committed three first-degree robberies prior to committing the present offense on January 29, 1997. He had been convicted of one of them prior to January 29, 1997. Subsequent to the commission of the January 29, 1997 robbery, but before sentencing thereon, defendant was convicted for robberies committed in 1997, but after the January 29, 1997 robbery. And in May 1998, defendant was convicted for two of the robberies that occurred before January 29, 1997.

■ It is defendant's position that he is not subject to the strictures of *N.J.S.A.* 2C:43–7.1 because the Three Strikes Law applies only "to defendants who have been convicted and punished

for the 'first strike' and 'second strike' offenses *before* committing the 'third strike' offense." We find no support for defendant's position in the text of the statute, in the legislative purpose in enacting the statute, or by analogy to other sections of the criminal code.

The first paragraph of *N.J.S.A.* 2C:43–7.1 clearly speaks only to prior convictions—*i.e.,* convictions preexisting sentencing for the offense that constitutes the third strike. Defendant does not attempt to draw strength for his position from that portion of the statute. Instead, defendant interprets subsection c. as evincing the necessary support for his contentions. While we agree that subsection c. shows a concern for temporal proximity and factors in commission with conviction, it does not, in our view, require the chronology defendant seeks. It does not say, and cannot reasonably be interpreted as implying, that the first two convictions must be entered prior to commission of the third crime. Rather, subsection c. places a ten-year perimeter around the relevant events in an apparent effort to maintain a level of timeliness consistent with the purpose of removing those criminals from society who demonstrate an inability to refrain from repeated commission of the most serious crimes. As our Supreme Court said in *State v. Oliver*, 162 *N.J.* 580, 589, 745 *A.*2d 1165 (2000), "[t]he statute was a response to a genuine legislative concern that repeat offenders pose a unique danger to society such that society could not be protected without the provisions of this Act." The Act is not rehabilitative. On the contrary, it is a legislative determination that certain offenders have forfeited the opportunity to attempt rehabilitation, having failed repeatedly to desist from serious criminal conduct. The establishment of a defendant's incorrigibility occurs upon the third judgment of conviction as long as the crime for which defendant is now being sentenced was committed, "either within 10 years of the date of the defendant's last release from confinement for commission of any crime or within 10 years of the date of the commission of the most recent of the crimes for which the defendant has a prior

conviction." *N.J.S.A.* 2C:43–7.1c. Here, it is undisputed that defendant's last release from prison was in 1996. His most recent crime for which he has a prior conviction was committed in June 1997. Clearly, the crime for which defendant is being sentenced, a robbery committed on January 29, 1997, was within ten years of his last release from confinement and also within ten years of the commission of the most recent crime for which he has a prior conviction.

We find no injustice in the application of the Three–Strikes Statute to defendant. Had he been convicted of his crimes in the same chronological sequence as their commission, he would have qualified under the statute even earlier. He would have qualified upon conviction for the present offense committed on January 29, 1997, following convictions for the 1990 robbery, and the robberies of January 16, 1997 and January 17, 1997 even with the same-day convictions for those two offenses.

The criminal code analogies closest to *N.J.S.A.* 2C:43–7.1 do not help the defendant. In *State v. Hawks,* 114 *N.J.* 359, 554 *A.*2d 1330 (1989), defendant had been convicted for a second Graves Act offense before he was convicted for the first offense. As we pointed out in *State v. Livingston,* 340 *N.J.Super.* 133, n. 2 at 142–143, 773 *A.*2d 1195 (App.Div.), *certif. denied,* 170 *N.J.* 206, 785 *A.*2d 435 (2001), in resolving the "previously convicted" issue the Supreme Court in *Hawks* held that the extended-term provisions of the Graves Act must be imposed on the entry of the second conviction no matter in what order the offenses occurred. *Hawks, supra,* 114 *N.J.* at 366–367, 554 *A.*2d 1330.

So too, we have held "that the persistent offender criteria embodied in *N.J.S.A.* 2C:44–3a requires neither offenses to have occurred nor judgments to have been entered prior to the offense then before the court for sentencing and, provided that the other criteria embodied in *N.J.S.A.* 2C:44–3a are satisfied, that the trial court can consider any judgment entered prior to sentencing provided that there is no pending appeal or right of direct appeal."

*State v. Mangrella,* 214 *N.J.Super.* 437, 445, 519 *A.*2d 926 (App. Div.1986), *certif. denied,* 107 *N.J.* 127, 526 *A.*2d 194 (1987).

Both the persistent offender statute and the Graves Act have the legislative purpose of punishment and deterrence, not rehabilitation. *State v. Haliski,* 140 *N.J.* 1, 11, 656 *A.*2d 1246 (1995); *Hawks, supra,* 114 *N.J.* at 366, 554 *A.*2d 1330; *State v. Hill,* 327 *N.J.Super.* 33, 43, 742 *A.*2d 605 (App.Div.1999), *certif. denied,* 164 *N.J.* 188, 752 *A.*2d 1290 (2000). We believe the same legislative purpose is evident in the Three–Strikes Law.

By contrast, the legislative objective in *N.J.S.A.* 2C:14–6, the enhanced penalty statute for multiple sex offenders, is the rehabilitation of first-time sex offenders. *Haliski, supra,* 140 *N.J.* at 10–11, 656 *A.*2d 1246. Thus, in *State v. Anderson,* 186 *N.J.Super.* 174, 451 *A.*2d 1326 (App.Div.1982), *aff'd o.b.,* 93 *N.J.* 14, 459 *A.*2d 302 (1983), we held that under *N.J.S.A.* 2C:14–6 relevant or subsequent offenses must occur after a conviction on the prior offense. Simultaneous convictions for separate offenses would not qualify for enhanced punishment. We there pointed out the unique language of *N.J.S.A.* 2C:14–6 as compared with other enhanced sentencing statutes such as *N.J.S.A.* 2C:44–3. Moreover, in *State v. Hawks, supra,* the Supreme Court apparently backed away, at least in part, from its prior affirmance of the *Anderson* analysis:

As an initial matter we find *Anderson* inapposite to an inquiry concerning the Graves Act sentencing provisions. We therefore disapprove of so much of *Lightfoot* as relied on that case. In *Anderson* the defendant was simultaneously convicted of committing three different sex offenses. Consistent with decisions interpreting comparable penalty statutes, the court concluded that enhanced-penalty statutes such as *N.J.S.A.* 2C:14–6 applied only to chronologically-sequential convictions and not to simultaneous convictions. *Id.* at 177, 451 *A.*2d 1326.

Although such an observation was unnecessary to its result, *Anderson* further concluded that the language of *N.J.S.A.* 2C:14–6—in which a "second or subsequent offense" is defined as occurring "if the actor has *at any time* been convicted" (emphasis added)—requires a second or subsequent offense to be preceded by a conviction. Without implying any view on the merits of that interpretation, we note that the language of *N.J.S.A.* 2C:14–6 varies distinctly from the definition of "prior conviction" contained in *N.J.S.A.* 2C:44–4(b) and relied on in the Graves Act scheme. The plain language of the Graves Act provisions does not limit, either

expressly or impliedly, the chronological sequence of convictions subject to its extended term provisions; the only requirement is that there be a prior conviction. [*Id.,* 114 *N.J.* at 365, 554 *A.*2d 1330.]

In our view, the Three–Strikes Statute in purpose and language is much more analogous to the Graves Act than to the enhanced penalties set out in *N.J.S.A.* 2C:14–6.

In *Hawks,* the Court went on to explicitly differentiate between statutes with the goals of punishment and deterrence and those seeking to foster rehabilitation. *Hawks, supra,* 114 *N.J.* at 365–366, 554 *A.*2d 1330. That difference continues to be noted in our case law. *Haliski, supra,* 140 *N.J.* at 10–11, 656 *A.*2d 1246; *Hill, supra,* 327 *N.J.Super.* at 42–43, 742 *A.*2d 605. We find that the Three Strikes Statute falls into the category of those legislative enactments that seek to punish and deter by removal of the offender from society. If two qualifying convictions precede the sentencing of the third offense and that offense was committed either within ten-years of defendant's most recent release from confinement for commission of any crime or within ten-years of the commission of the most recent of the crimes for which defendant has a prior conviction, then defendant is eligible for the enhanced punishment of *N.J.S.A.* 2C:43–7.1a, even though the present sentence is for an offense committed prior to the entry of the pre-qualifying convictions.

 Defendant's remaining issues, as a practical and legal matter, are essentially moot in light of our holding that he qualifies for a life sentence without parole. Defendant argues that the jury was not adequately instructed that a firearm possessed for an unlawful purpose must be a real firearm, and not a toy or imitation, at least for purposes of a second-degree conviction. Implicitly, defendant also contends there was not enough attention given to whether the gun was "real" for purposes of extended sentencing under *N.J.S.A.* 2C:44–3d, a portion of the Graves Act. *See State v. Gantt,* 101 *N.J.* 573, 503 *A.*2d 849 (1986).

Our review of the jury instructions, including those given supplementally in response to the jury's question, satisfies us that the

jury was properly charged. The difference between the acceptability of a simulated weapon as an element of armed robbery and the need to prove a real gun for purposes of an unlawful possession conviction could have been better emphasized, but we find no reversible error. Additionally, the sentence imposed under the Graves Act must be vacated and the conviction for unlawful possession of a firearm merges into the armed robbery conviction. Defendant will not be eligible for parole prior to age seventy. *N.J.S.A.* 2C:43–7.1e. We see no likelihood that the merged conviction for unlawful possession of a firearm will have any real penal consequences.

Defendant's final issue, a claim of excessive sentence, is also moot.

Defendant's convictions are affirmed. His sentence is vacated and the matter remanded to the trial court for imposition of sentence in compliance with *N.J.S.A.* 2C:43–7.1a and d.